# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| A., BY HIS PARENT & NEXT FRIEND, MR. A., AND MR. A.,<br><br>            Plaintiffs,<br>    v.<br><br>HARTFORD BOARD OF EDUCATION and NEW BRITAIN BOARD OF EDUCATION,<br><br>            Defendants. | 3:11-CV-01381 (CSH) |

| | |
|---|---|
| NEW BRITAIN BOARD OF EDUCATION,<br><br>            Plaintiff,<br>    v.<br><br>J.A., A STUDENT, AND MR. A., PARENT AND NEXT FRIEND OF J.A.,<br><br>            Defendants. | 3:11-CV-01431 (CSH) |

## RULING ON PLAINTIFFS' MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD, DEFENDANT HARTFORD BOARD OF EDUCATION'S MOTION TO DISMISS PLAINTIFFS' AMENDED COUNTERCLAIMS, AND DEFENDANT HARTFORD BOARD OF EDUCATION'S MOTION TO RE-OPEN DISCOVERY

## I.    INTRODUCTION

Plaintiff A. ("Student") is a special education student who lives with his Plaintiff Parent ("Parent"), Mr. A., in New Britain, Connecticut.  (Collectively, "Plaintiffs.")  At all times relevant to this lawsuit, Student was identified as being in need of special education and related services under the Individuals with Disabilities Education Improvement Act (hereinafter "IDEA")

under the disability category of autism.  Until sometime shortly after this lawsuit was filed – i.e.,

on September 2, 2011 – Student was enrolled at Classical Magnet School (hereinafter "Magnet

School") which is situated outside of Student's home education district (i.e., New Britain, under

the oversight of Defendant New Britain Board of Education) and which is run and overseen by

Defendant Hartford Board of Education.  (Hereinafter New Britain Board of Education and

Hartford Board of Education will collectively be referred to as "Defendants.")  The parties agree

that Defendants New Britain Board of Education and Hartford Board of Education were jointly

responsible for providing a free appropriate public education (hereinafter "FAPE") to Student

during the time that he lived in New Britain and attended Magnet School in Hartford.

On or around October 7, 2010, Plaintiffs requested an administrative hearing from the

Connecticut Department of Education to challenge what Plaintiffs considered to be the failure of

Defendants to provide a FAPE to Student.  The parties initially agreed to participate in a

mediation in place of an administrative resolution meeting and hearing; however, a November

2010 mediation was unsuccessful, and so the matter proceeded to an administrative hearing.

Following a 13-day administrative hearing in which this matter was heard as a contested case

pursuant both to Conn. Gen. Stat. § 10-76 and related regulations and to 20 U.S.C. § 1415(f) and

related regulations, as well as in accordance with the Uniform Administrative Procedure Act, the

due process Administrative Hearing Officer who oversaw and adjudicated the hearing issued a

Final Decision and Order on August 2, 2011.  Among other findings, the Administrative Hearing

Officer found partially in favor of the Plaintiffs based on the Defendants' failure to provide a

FAPE for Student for the 2009-2010 and 2010-2011 school years, stating that "the program

provided by the [New Britain Board of Education] and the Magnet School [run by the Hartford

Board of Education] … was not appropriate," and, moreover, that the "Magnet School and the [New Britain] Board [of Education] violated the Parent's [IDEA] procedural rights relating to the 2010-2011 school year in several respects." *See, e.g.,* [Doc. 1] Ex. A at 18.

By way of remedial relief, the Administrative Hearing Officer issued several remedial orders, familiarity with which is assumed for the purposes of this Ruling.  Despite these findings, however, the Administrative Hearing Officer found that there was insufficient evidence to show that Student would benefit from an in-home program coordinated by a Board Certified Behavioral Analyst.  *Id.* at 19.

Plaintiffs filed the first of these captioned consolidated actions in this Court on September 2, 2011, seeking an award from both Defendants of attorneys' fees and costs for work performed during the administrative hearing process. [Doc. 1].  In early November of the same year, this action was consolidated with another action, commenced on September 16, 2011 and captioned New Britain Board of Education v. J.A., No. 3:11-CV-01431. [Doc. 23].  The latter action was brought by New Britain Board of Education as a limited appeal of the Administrative Hearing Officer's ruling.[1]  Plaintiffs filed an Answer to New Britain Board of Education's action, then filed a Motion to Amend/Correct this Answer on May 22, 2012. [Doc. 33].  Shortly thereafter, Plaintiffs filed a Motion to Supplement the Administrative Record. [Doc. 38].  On September 10, 2012, following a Ruling by this Court which denied as moot Plaintiffs' prior motion to Amend/Correct their Answer, *see* [Doc. 66], Plaintiffs filed another Amended Answer and Amended Counterclaims (hereinafter Plaintiffs' "Amended Answer and Counterclaims") [Doc. 67] to Defendant New Britain Board of Education's Complaint in the then-consolidated action,

---

[1]   New Britain Board of Education's Complaint constitutes the first docket entry in New Britain Board of Education v. J.A., No. 3:11-CV-01431.

naming Hartford Board of Education as an additional party to the action.  This is the controlling Answer and Counterclaims for the purposes of this ruling.

In their September 10, 2012 Amended Answer and Counterclaims, Plaintiffs allege two Counterclaims.  The first Amended Counterclaim alleges that Defendants New Britain Board of Education and Hartford Board of Education are liable for violating the Americans with Disabilities Act, 42 U.S.C. § 12132 et seq. ("ADA") and Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794, by failing and refusing to implement the Administrative Hearing Officer's decision. [Doc. 67] at 16, 18.  Plaintiffs further allege that subsequent to the Administrative Hearing Officer's decision, Defendants have "taken actions that interfere with the implementation" of that decision, "such as refusing to authorize the independent consultant time to fully evaluate the Student's educational program and placing limitations on the scope of the activities of the consultant."  *Id.* at 18.  Moreover, Plaintiffs state Defendants' "repeated refusal ... to implement such critical aspects of the [Administrative Hearing Officer's] decision as allowing the independent consultant sufficient time to properly evaluate the Student, ... failing to implement critical relief ordered by the hearing officer ..., refusal to pay for the Parent's independent evaluation and refusal to pay for transportation related to the evaluations ordered by the hearing officer have interfered with the implementation" of a FAPE to the Student and "with his right to have [the Administrative Hearing Officer's order] implemented[,] in violation of the ADA and [Section] 504."  *Id.*  Plaintiffs allege that Defendants have refused to implement such aspects of the Administrative Hearing Officer's decision in part because Parent "has acted to enforce his rights under the ADA and Section 504."  *Id.*

Plaintiffs' Amended Second Counterclaim alleges liability on the part of Defendants New Britain Board of Education and Hartford Board of Education for failing to implement the Administrative Hearing Officer's Final Decision and Order by failing "to retain the Independent Educational Consultant to help the [Planning and Placement Team] develop and implement an appropriate IEP" for Student throughout most of the 2011-2012 school year, and, moreover, for failing "to implement the ordered compensatory education services in a timely and safe manner due to providing unreliable, and often unsafe, transportation to the Student." *Id.* at 21.

In August of 2011, Plaintiffs filed a complaint concerning Defendants' alleged non-compliance with the hearing officer's decision with the Connecticut Department of Education pursuant to C.G.S.A. § 10-76h(d)(2). The Connecticut Department of Education processed Plaintiff's complaint pursuant to the formal Connecticut State Complaint Resolution Process. [Doc. 33-5]. In December of 2011, after reviewing the matter, the Connecticut Department of Education directed Defendants to implement specific parts of the Administrative Hearing Officer's Order. As Plaintiffs state, because state law does not permit the Connecticut Department of Education "to order compensatory education or other appropriate remedial relief," the Connecticut Department of Education "indicated that the issuance of an order requiring remedial compensatory education, if any, would have to come from" another source [Doc. 33-1] at 3. The Connecticut Department of Education informed the parties that "the normal procedure followed when corrective actions issued through the Complaint Resolution Process are not completed as ordered is to refer the issue to the [Connecticut] Attorney General's Office," but indicated its belief that Defendants' "failure to complete the corrective actions" could "be addressed through [Defendant New Britain's] appeal" and presumably any answer and

5

counterclaims Plaintiffs brought thereto, as a possible alternate path.  *Id.*; see also [Doc. 33-4], [Doc. 33-5], [Doc. 33-6], and [Doc. 33-7].  A more detailed description of Plaintiffs' claims may be found *infra*.

In their Amended Counterclaims, filed in the aforementioned action initiated by Defendant New Britain Board of Education, Plaintiffs move the Court for compensatory and punitive damages; attorney's fees, costs, and litigation expenses; and three Court orders: (1) an order requiring Defendants to immediately implement the Administrative Hearing Officer's Order; (2) an "order against all Defendants awarding the Student at a minimum one full year of compensatory education in the form of retaining the Institute for Professional Practice" to consult regarding the development and implementation of an Individualized Education Program ("IEP") and to provide a Board Certified Behavioral Analyst and paraprofessional/therapist to implement the Student's program; and (3) an order requiring the Defendants "to complete the 180 hours of individualized therapy required by" the Administrative Hearing Officer's Final Decision and Order.  "In the alternative, the Parent requests that the court order [Defendants] to place the Student at the Connecticut Center for Child Development for one school year given [Defendants'] delay in implementing the Hearing Officer's Decision."  *Id.* at 23-24.

## II.    PLAINTIFFS' MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD

In June of 2012, Plaintiffs filed a Motion to Supplement the Administrative Record. [Doc. 38].  Plaintiffs separately filed the documents, sealed by order of this Court, with which they seek to supplement the record, labeled as exhibits A through UU. [Doc. 41].  Plaintiffs assert that these exhibits, which they now seek to add to the record, demonstrate elements of the claims they make in their Amended Counterclaims, specifically that despite Plaintiffs' and the

6

Connecticut Board of Education's efforts, "Defendants have delayed and/or failed to implement the Hearing Officer's Order." *Id.* at 1. Plaintiffs accordingly move that this Court allow them to supplement the record with these documents, which were "created after the hearing decision was issued," and which Plaintiffs "offer[] to prove that the post-hearing actions of ... Defendants violated ... Plaintiffs' right to have the Hearing Officer's Order implemented properly and constituted interference with ... Plaintiff's federal rights in violation of the ADA and §504." *Id.* Plaintiffs specify that these documents "relate[] to events that occurred *after* the hearing decision was issued" and therefore "do not constitute retrospective evidence that may be inadmissible to prove" an IDEA claim. *Id.*

As Plaintiffs note, while there is a body of caselaw concerning when and under what conditions parties may introduce supplemental evidence in cases involving special education statutes and the implementation of IEPs, much of it is concerned with the question of whether such evidence may be used by a court either to consider a child's current status in his or her current education placement or to consider retrospectively a child's performance in evaluating the appropriateness of his or her IEP, particular educational institution, or, more generally, the actions of specific parties or boards of education. *See, e.g., Doe v. East Lyme Board of Education*, No. 3:11-CV-00291, 2012 WL 1252695 at *4-6 (D.Conn. April 12, 2012) (containing a thorough overview and discussion of recent caselaw on this topic). Here, in contrast, Plaintiffs do not seek to introduce exhibits A through UU in order to demonstrate the current or retrospective effectiveness or ineffectiveness of any particular IEP or course of action, or the impact of such IEP or course of action upon Student's performance, health, or anything else. Rather, Plaintiffs seek to introduce these supplemental exhibits to attempt to demonstrate that

Defendants have acted in ways subsequent to the due process administrative hearing that have interfered with the implementation of Plaintiffs' exerting and realizing their rights under assorted federal laws.  This evidence is directly relevant to Plaintiffs' Amended Answer and Counterclaims.  The Court also notes that the Connecticut Department of Education has made statements with respect to the extent and limits of its ability to respond to such actions, as addressed in detail *infra*.

Defendant Hartford Board of Education filed an Objection to Plaintiffs' Motion to Supplement the Record. [Doc. 47].  In this Objection, Defendant Hartford Board of Education made four arguments: (1) that Plaintiffs have no right to bring a civil action to enforce the portion of the Hearing Officer's decision that provided them with a remedy; (2) that the claims Plaintiffs are bringing could have been brought under the IDEA rather than under other federal statutes, and thus under the language of the IDEA and related caselaw Plaintiffs are required to exhaust their administrative remedies before bringing such claims before this Court; (3) that Plaintiffs should not be allowed to use supplementation to have a *de novo* trial on issues that were reviewed in the state administrative hearing process; and (4) that the introduction of such supplemental documents would be prejudicial to Defendant Hartford Board of Education.  *Id.* at 1-2.

The Court has examined exhibits A through UU and has read carefully all the briefing on this issue, and concludes that this is an instance in which it should and shall exercise its discretion to supplement the record.  *See A.S. v. Trumbull Board of Education*, 359 F.Supp.2d 102, 104 (D.Conn. 2005) (noting that a court may "exercise its discretion to supplement the record.").  These additional documents directly and narrowly pertain to the contentions that

Plaintiffs make in their Amended Counterclaims, including that the Connecticut Board of Education "indicated in correspondence that though the Defendants' response to the Hearing Officer's Order was inadequate, it [did] not have the authority to compel the Defendants" to comply, and "that Defendants' actions violated ... Plaintiffs' right to have the Order of the Administrative Hearing Officer implemented properly and constituted interference with the Plaintiffs' [IDEA] rights in violation of" various laws and regulations.  [Doc. 47] at 2.  The Court further notes that the arguments Defendant Hartford Board of Education raise in its Objection to the supplementation of the record have a significant amount of overlap with those it raises in its Motion to Dismiss, which is discussed *infra*.

The Court finds it appropriate for Plaintiffs to supplement the administrative record by offering relevant evidence pertaining to Defendants' alleged failure to implement the Hearing Officer's Order and the Court does not see how doing so would unfairly prejudice Defendant Hartford Board of Education.  The Court therefore GRANTS Plaintiffs' Motion to Supplement the Administrative Record [Doc. 38], and admits into evidence all supplemental exhibits offered by Plaintiffs as Exhibits A-UU to their Motion to Supplement the Administrative Record into evidence.

## III.   DEFENDANT HARTFORD BOARD OF EDUCATION'S MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6), Defendant Hartford Board of Education now moves the Court in a Motion to Dismiss, [Doc. 70], to "dismiss the First and Second Counterclaims for Plaintiffs' Amended Answer for failure to state a claim upon which relief can be granted and/or for lack of subject matter jurisdiction." [Doc. 70] at 1.

Defendant Hartford Board of Education makes eight contentions in support of its Motion to Dismiss:

(1) That the Second Counterclaim, which purports to use 42 U.S.C. § 1983 to request monetary and punitive damages for a violation of the IDEA violation, must be dismissed because 42 U.S.C. § 1983 cannot be used to enforce the IDEA, *Id.*;

(2) That this Court lacks jurisdiction over the Plaintiffs' "claims to enforce an administrative due process hearing officer's decision" and, as such, the First and Second Counterclaims "must be dismissed to the extent that they are requesting enforcement of the hearing officer's decision," *Id.*;

(3) That this Court lacks jurisdiction over the Plaintiffs' "claims under the IDEA as the [P]laintiffs failed to exhaust their administrative remedies prior to bringing their claims to federal court," *Id.*;

(4) That this Court "lacks jurisdiction over the first [C]ounterclaim alleging claims under the [ADA] and Section 504 of the Rehabilitation Act," as Plaintiffs "failed to exhaust their administrative remedies prior to bringing their claims to federal court," *Id.* at 2;

(5) That this Court must dismiss Plaintiffs' First Counterclaim as Plaintiffs have not alleged "facts which if taken as true would lead a reasonable fact finder to determine" that Defendant Hartford Board of Education "failed to implement the hearing officer's order," *Id.*;

(6) That this Court must dismiss Plaintiffs' First Counterclaim as Plaintiffs have not alleged "facts which if taken as true would lead a reasonable fact finder to determine" that Defendant Hartford Board of Education "failed to implement the hearing officer's order in retaliation against the plaintiffs for filing a due process complaint in the first place," *Id.*;

(7) That this Court must dismiss the First Counterclaim because 42 U.S.C. § 1983 "is inapplicable to the ADA and/or Section 504," *Id.*;

(8) That this Court must dismiss the request for punitive damages because "punitive damages are not available against a municipality under 42 U.S.C. § 1983 and/or under the ADA and Rehabilitation Act." *Id.*

Plaintiffs filed an Opposition Memorandum to Defendant Hartford Board of Education's Motion to Dismiss, [Doc. 77], and Defendant Hartford Board of Education filed a Reply brief in support of its Motion.  [Doc. 85].  While a stay had been in place by Order of this Court at the time in which Defendant Hartford Board of Education filed its Reply, [Doc. 90], that stay was lifted in February of 2013 and all parties were directed by the Court to file by February 28, 2013 "any briefs that would have been filed but for the aforementioned stay."  [Doc. 98].  No further briefs relating to Defendant Hartford Board of Education's Motion to Dismiss have been filed. This matter is therefore ripe for adjudication and, accordingly, the Court now rules on Defendant Hartford Board of Education's Motion to Dismiss.

### A.    Legal Standards for a Motion to Dismiss

Defendant Hartford Board of Education has filed its Motion to Dismiss pursuant to both Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6).

A motion to dismiss for lack of subject matter jurisdiction is governed by Fed. R. Civ. P. 12(b)(1), under which a case is properly dismissed "when the court lacks the statutory or constitutional power to adjudicate the case."  *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996).  Both the moving and non-moving parties "may use affidavits and other materials beyond the pleadings themselves in support or in opposition to a challenge to

subject matter jurisdiction" and the "district court also may inquire, by affidavits or otherwise, into the facts as they exist." *Tuccio Development, Inc. v. Town of Ridgefield*, No. 3:06-CV-01821, 2008 WL 749855 at *1 (D. Conn. March 19, 2008) (quoting *Matos v. United States Dept. of Housing & Urban Development*, 995 F. Supp. 48, 49 (D. Conn. 1997) and *Land v. Dollar*, 330 U.S. 731, 735 (1947) (internal quotation marks omitted)).  The parties asserting that subject matter jurisdiction does indeed exist – here, Plaintiffs – bear the burden of proving it by a preponderance of the evidence, and all ambiguities and inferences will be drawn in those parties' favor.  *Aurecchione v. Schoolman Transp. System, Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

A motion to dismiss for a failure to state a claim upon which relief can be granted is brought under Fed. R. Civ. P. 12(b)(6).  Such a motion must be decided on "facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and [] matters of which judicial notice may be taken." *Lunardini v. Massachusetts Mut. Life Ins. Co.*, 696 F.Supp. 2d 149, 155 (D. Conn. 2010) (citing *Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) and *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).

A court's focus on a motion to dismiss under Rule 12(b)(6) is "not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995).  For this reason, when "deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff." *Moore v. Mara*, 3:08-CV-01946, 2010 WL 3270223 at *3 (D. Conn. August 17, 2010).  However, while a complaint need not contain detailed factual allegations to survive a

motion to dismiss under Fed. R. Civ. P. 12(b)(6), it will not suffice if it merely "tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  Thus a plaintiff must do more than provide labels and conclusions; "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).

In sum, the overarching function of a motion to dismiss under either 12(b)(1) or 12(b)(6) "is merely to assess the legal feasibility of the complaint, not to assay the weight of evidence which might be offered in support thereof" and, accordingly, the "issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." *Bici v. Napolitano*, No. 3:10-CV-01991, 2012 WL 642781 at *1 (D. Conn. Feb. 28, 2012) (internal quotation marks omitted) (quoting *Mytych v. May Dept. Store Co.*, 34 F.Supp. 2d 130, 131 (D. Conn. 1999) and *United States v. Yale New Haven Hosp.*, 727 F.Supp. 784, 786 (D. Conn. 1990)).

### B.    Legal Discussion

#### 1.    The Court's Ability to Hear or Enforce a Hearing Officer's Due Process Decision

In its Motion to Dismiss, Defendant Hartford Board of Education contends that Plaintiffs' First and Second Amended Counterclaims must fail because this Court lacks jurisdiction over Plaintiffs' claims to enforce an administrative due process hearing officer's decision.  Defendant

Hartford Board of Education raises two sorts of issues concerning whether Plaintiffs may bring this lawsuit.  The first is whether Plaintiffs have exhausted administrative remedies prior to bringing their enforcement claims to this Court – and, if they have not, whether Plaintiffs fall into one of the exceptions to this general requirement that prior caselaw has identified and carved out.  The second is whether Plaintiffs have standing to bring their enforcement claims at all; Defendant Hartford Board of Education contends that, if Plaintiffs are considered "prevailing parties" in the Hearing Officer's decision – and Defendant Hartford Board of Education asserts that they are – they have no right to seek an appeal thereto, or this Court's enforcement of the Hearing Officer's decision regardless of any exhaustion in the administrative process.  *See* [Doc. 70-1] at 11.

> **a.  Whether Plaintiffs May Bring an Action in this Court to Enforce the Administrative Hearing Officer's Final Decision and Order**

Defendant Hartford Board of Education claims that Plaintiffs are not entitled "to seek enforcement of a hearing officer's decision in federal court" because, among other reasons, "the IDEA makes it clear that it is the providence of the state to enforce hearing officer decisions." [Doc. 70-1] at 11.  Defendant Hartford Board of Education's main argument with respect to Plaintiffs' stand-alone enforcement claims, however, is that Plaintiffs are not aggrieved parties under the IDEA and accordingly their First and Second Amended Counterclaims must fail, as Plaintiffs have no statutory "private right of action to enforce [the administrative] hearing officer's decision." [Doc. 70-1] at 11.  Defendant Hartford Board of Education therefore moves this Court to dismiss Plaintiffs' First and Second Counterclaims for lack of jurisdiction.  *Id.*

In support of this argument, Defendant Hartford Board of Education directs the Court's attention to Section 1415 of the IDEA, pursuant to which a "decision made in a hearing" such as that rendered by the administrative hearing officer in this matter in his August 2011 final decision and order "shall be final, except that any party involved in such hearing may appeal such decision" subject to certain parameters.  20 U.S.C. § 1415(i)(1)(A).  Indeed under subsection (g) of Section 1415 of the IDEA, "any party aggrieved by the findings and decision rendered in such a hearing may appeal such findings and decision to the State educational agency."  20 U.S.C. § 1415(g)(1).  "The State educational agency shall [then] conduct an impartial review of the findings and decision appealed," and the State educational agency's "officer conducting such review shall make an independent decision upon completion of such review."  20 U.S.C. § 1415(g)(2).  The independent decision rendered by the State educational agency's officer shall also be considered "final, except that any party may bring a[] [civil] action" if that party either "does not have the right to an appeal under subsection (g)" – which is to say, if the state in which that party resides and is receiving education does not have an appropriate apparatus for such a review – or if that party is "aggrieved by the findings and decision made under this subsection," i.e., under the outcome of an appeal brought pursuant to the IDEA.  20 U.S.C. § 1415(i)(B) and 20 U.S.C. § 1415(2)(A).

In either circumstance, such a party possesses a statutory right under the plain language of the IDEA "to bring a civil action with respect to the complaint presented pursuant to this section, which action *may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy*."  20 U.S.C. § 1415(i)(1)(B) and 20 U.S.C. § 1415(2)(A) (emphasis added).  As an initial matter, then, under the plain language of

Section 1415 of the IDEA, once certain steps and measures have been taken in a special education case that case is *not solely in the provenance of the state*, as Defendant Hartford Board of Education avers.

No party to this now-consolidated lawsuit questions that "[u]nder the IDEA, a party who is *aggrieved* by the findings and decision made under [an administrative hearing] *shall have the right to bring a civil action* with respect to the complaint presented pursuant to the [applicable IDEA section], which action may be brought by any State court of competent jurisdiction or in a district court of the United States." *Brennan v. Regional School Dist. No. Bd. Of Educ.*, 531 F.Supp. 2d 245, 260-61 (D. Conn. 2008) (emphasis added) (citation omitted).  There is also little question that courts in this district have previously interpreted Section 1415 to mean that the civil court appeal provisions contained therein (specifically within 20 U.S.C. § 1415(i)(2)(A)) preclude through omission a *prevailing party's right* – as opposed to an *aggrieved party's right* – to seek enforcement or other review of a hearing officer's decision in federal or state court.  *See, e.g., Mrs. D. v. Granby Bd. of Educ.*, 453 F.Supp.2d 569, 577 (D. Conn. 2006);  *Brennan v. Regional School Dist. No. Bd. Of Educ.*, 531 F.Supp. 2d at 260-61.  Defendant Hartford Board of Education now argues that Plaintiffs, whom Defendant Hartford Board of Education avers are "prevailing parties" with respect to the pertinent hearing and decision, have impermissibly brought a civil action in this Court, which, under the IDEA and prior caselaw, must now be dismissed.

The Court disagrees that the situation currently before it is comparable to those which this district has examined in the prior caselaw which Defendant Hartford Board of Education cites, or that it must dismiss Plaintiffs' Amended Counterclaims under the IDEA.  On the contrary, in the

now-consolidated matter before this Court, Plaintiffs *did not bring* the civil action pursuant to

which they filed an Amended Answer and Counterclaims; that action was brought by Defendant

New Britain Board of Education.   The pertinent language of the IDEA is clear: "Any party

aggrieved by the" pertinent findings and decision "shall have the right to *bring* a civil action with

respect to the complaint presented....."  20 U.S.C. 1415(1)(2)(A).  Black's Law Dictionary defines

what it means to "bring an action": either "[t]o sue" or to "*institute* legal proceedings." *Black's*

*Law Dictionary* (9th ed. 2009) (emphasis added).  Black's Law Dictionary similarly defines "to

sue" as "[t]o *institute* a lawsuit against (another party)" and, in turn, "to institute" as "[t]o *begin* or

*start*," or to "*commence*."  *Id.* (emphasis added).  Plaintiffs raised the issues that are contested in

this Motion to Dismiss in *crossclaims* to an action which Plaintiff did not bring, initiate, start, or

commence.[2]

       Ten years ago, the Second Circuit decisively held that "a defendant does not 'institute' an

action when he asserts a counterclaim," and that "[r]ather [it is] a plaintiff [who] commence[s]

the action by *filing a complaint that names a defendant*."  *Local Union No. 38, Sheet Metal*

*Workers' Intern. Ass'n, AFL-CIO v. Pelella*, 350 F.3d 72, 82 (2d Cir. 2003) (emphasis added)

(citations omitted).  Thus in a case involving a statute whose text stated that a union member was

limited from "institut[ing] an action," the Second Circuit held that "the plain language of th[is]

---

       [2]   While the Court notes that this civil action, brought by Defendant New Britain Board
of Education, was consolidated with a civil action which was indeed brought by Plaintiff,
*see* [Doc. 24], this fact does not change the Court's analysis.  Plaintiffs simply did not bring the
civil action or complaint pursuant to which they alleged their Amended Counterclaims.
Similarly, while Plaintiffs' Amended Counterclaims may have added Defendant Hartford Board
of Education as a party defendant to the matter, this does not change the simple fact that
Plaintiffs themselves did not *bring the civil action* to which they filed the counterclaims now in
question.

statutory text, when read literally, does not circumscribe a [union] member's right to pursue a *counterclaim* because the assertion of a counterclaim does not 'institute an action.'" *Id.* (emphasis added).  The Court of Appeals explained that "[a]n action is ... *instituted* when a plaintiff files a complaint as that constitutes the first step invoking the judicial process." *Id.* (emphasis added) (citations omitted); *cf. McNeil v. U.S.*, 508 U.S. 106, 112 (1993).  Indeed, as Fed. R. Civ. P. 3 states, "[a] civil action is commenced by filing a complaint with the court."[3]

While it may be true that under the IDEA "[a]ny party aggrieved by the" pertinent findings and decision "shall have the right to *bring* a civil action with respect to the complaint presented," 20 U.S.C. 1415(1)(2)(A), and while it is true that in the past this district and Circuit have interpreted such statutory language to preclude parties that are not aggrieved from *bringing* civil actions with respect to the complaint presented, the Court finds that since Plaintiffs did not *bring* the civil action to which they filed the Counterclaims which Defendant Hartford Board of Education now seeks to dismiss, but rather made the claims which are now the subject of this Motion to Dismiss in their Amended Counterclaims, as the Second Circuit held with respect to the union worker plaintiff in *Local Union No. 38, Sheet Metal Workers' Intern. Ass'n, AFL-CIO v. Pelella,* there is nothing in the applicable statutory text which prevents Plaintiffs from asserting such claims, in the form of counterclaims, that they may not assert in a complaint

---

[3]   As the Second Circuit noted in *Local Union No. 38, Sheet Metal Workers' Intern. Ass'n, AFL-CIO v. Pelella*, the advisory notes to Fed. R. Civ. P. 3 note that "[t]he first step in an action is the filing of a complaint," whereas a "counterclaim, by definition, is a 'claim for relief asserted against an opposing party after an original claim has been made' ... Counterclaims are therefore generally asserted in the answer to a previously filed complaint."   *Local Union No. 38, Sheet Metal Workers' Intern. Ass'n, AFL-CIO v. Pelella*, 350 F.3d *at 82* (citations and some internal quotation marks omitted); *see also*, e.g., *Black's Law Dictionary* (9th ed. 2009).

initiating a civil action.[4]  It is therefore altogether irrelevant whether Plaintiffs constitute

"aggrieved" parties in the context of this matter.[5]

      A second statutory argument could also be made that Plaintiffs did not have a right to

seek this Court's enforcement of the administrative hearing officer's decision under both 34

C.F.R. § 300.152 and C.G.S.A. § 10-76h.  Under the former, "[a] complaint alleging a public

agency's failure to implement a due process hearing decision *must be resolved by* the [state

---

     [4]  The Court also notes the possibility that *in this instance*, and at this stage of the IDEA appeal and enforcement process, the claim alleged in Defendant Hartford Board of Education's Motion to Dismiss that Plaintiffs are not sufficiently "aggrieved" with respect to those aspects of the hearing officer's decision and order which they now ask this Court to enforce has in actuality been waived.  Whether this is in fact true would be determined by whether the impartial Complaint Resolution Process review Plaintiffs sought and received from the Connecticut State Department of Education constituted an appeal under U.S.C. § 1415(g)(2).  If this Complaint Resolution Process review *did* in fact constitute an IDEA appeal, then it would logically follow that Plaintiffs had possessed no right under 20 U.S.C. § 1415(g)(2) to seek such an appeal if they were not sufficiently aggrieved by the hearing officer's decision and findings, as such a review would then have constituted a statutorily sanctioned course of action available *under the exact same statutory language evoked to dispute this Court's jurisdiction*, and therefore would have been permissibly brought solely by those parties which were "*aggrieved* by the findings and decision rendered" in an administrative officer's final decision and order.  20 U.S.C. § 1415(g)(1) (emphasis added).  There is nothing in the record to suggest that Defendant Hartford Board of Education raised or voiced any concern whatsoever with respect to Plaintiffs' currently purported non-aggrieved status, or, put another way, with respect to Plaintiffs' lack of standing to seek such a state-based appeal and review, at any time prior to or during the State Board of Education's involvement in this matter.

     [5]  The Court further notes but does not arrive at any conclusion regarding Plaintiffs' contention *it is not clear that Plaintiffs are sufficiently "prevailing parties"* with respect to the Hearing Officer's Final Decision and Order, given that Plaintiffs rightly point out at footnote 7 in [Doc. 77] at 32 that Defendant Hartford Board of Education has denied in its Answer to Plaintiff's Second Amended Complaint that Plaintiffs are the prevailing parties "as to the majority of the issues raised in the[ir] complaint."  [Doc. 29] at 4.  Without making a ruling on this issue, the Court does note that the possible inconsistency within Defendant Hartford Board of Education's own pleadings places significant material facts at issue and, as well, further highlights differences between this case and former cases decided in this district in which plaintiff-parents were held not to have a right to enforce an Administrative Hearing Officer's decision and order.

educational agency]."  34 C.F.R. § 300.152(c)(3) (emphasis added).  Under the latter, "[i]f the

local or regional board of education" that is "responsible for providing special education ... does

not take action on the findings or prescription of the hearing officer or board" within a proscribed

number of days, "the State Board of Education shall take appropriate action to enforce the

findings or prescriptions of the hearing officer or board," which may include "application to the

Superior Court for injunctive relief to compel such local or regional board or school district to

implement the findings or prescription of the hearing officer or board...."  C.G.S.A. § 10-

76h(d)(2); *see also Mrs. K. v. Sergi*, No. 3:96-CV-00482, 2007 WL 988621 at *8 (D. Conn.

March 30, 2007) (stating that if the local or regional educational agency "does not take action on

the findings or prescriptions of the hearing officer within fifteen days, the State [Department of

Education] must take appropriate action to enforce the findings or prescriptions of the hearing

officer within fifteen days.").

        It could be contended that under these two statutes, Plaintiffs' Amended Counterclaims,

which allege liability on the part of both Defendants for various actions including not

implementing aspects of the hearing officer's decision, ought not to be before this Court.  The

Court ultimately finds such a potential argument unconvincing, however.  Although it is true that

"[a] complaint alleging a public agency's failure to implement a due process hearing decision

must be resolved by the [state educational agency]," 34 C.F.R. § 300.152(c)(3) (emphasis

added), Plaintiffs *did* make such a complaint to the Connecticut Department of Education, which

*did* in turn resolve the matter by engaging in its usual Complaint Resolution Process – i.e., by

concluding that Defendants were not implementing some aspects of the decision and order; by

instructing Defendants that they must do so; by giving Defendants explicit notice that

enforcement of contested aspects of the Hearing Officer's decision would be turned over to another authority should Defendants continue not to comply with pertinent directives; and by acknowledging that this Court might resolve these issues as part of Defendant New Britain Board of Education's appeal of the Hearing Officer's decision and order, in response to which Plaintiffs' Counterclaims were made.  *See* [Doc. 33-7].  In other words, the Connecticut Department of Education *did* resolve this issue, and further indicated to the parties its lack of authority to enforce its resolution directly, its knowledge and approval of this now-consolidated action, and its apparent belief that its resolution could be addressed or enforced by this Court.

In short, nothing in the language of either C.G.S.A. § 10-76h(d)(2) or 34 C.F.R. § 300.152(c)(3) directly precludes the action now before this Court, particularly when the state educational agency charged with resolving complaints about implementation about due process orders has indicated knowledge and approval of this action and particularly when Plaintiffs' *counterclaims*, and not a *complaint*, were brought pursuant to an assortment of federal statutes and concern *liability* of Defendants for allegedly not implementing the hearing officer's decision rather merely moving the Court for enforcement of the decision itself.

The Court has closely reviewed the recent District of Connecticut decisions upon which Defendant Hartford Board of Education most heavily relies in order to contend that Plaintiffs have no standing to bring, and consequently that this Court has no jurisdiction to hear, Plaintiffs' liability and implementation claims.  These prior decisions, however, involve quite different fact patterns from those which exist in the case at bar, and involve situations both in which non-aggrieved IDEA plaintiffs themselves brought the civil actions being adjudicated, and in which the Connecticut Department of Education was not given adequate time or opportunity to address

21

or resolve plaintiffs' allegations that a hearing officer's final decision and order were not being

implemented.  As well, these decisions involve suits which were *brought solely under the IDEA*

and not under other federal statutes, as is the case here (an argument that Plaintiffs raise in

support of their position that such caselaw is inapposite to the case at bar).

The 2008 case of *Brennan v. Regional School Dist. No. Board of Education* nicely

illustrates the many differences that exist between facts in the caselaw on which Defendant

Hartford Board of Education chiefly relies and those present in the case at bar.  There, plaintiff

parents *brought a civil action* in which they sued a school board over issues pertaining to the

IDEA and the lack of enforcement of the hearing officer's decision and order.  The district court

found that "[t]he problem with the parents' enforcement claim [was] that they [were] not

'aggrieved' by the portion of the findings and decisions made by the [hearing officer] during the

impartial due process hearing and which [were] the subject of the[ir] partial summary judgment

motion" before the district court.  *Brennan v. Regional School Dist. No. Board of Education* ,

531 F.Supp. 2d at 261 (some quotation marks removed).  Rather, the court found that the parents

were "'aggrieved' with the steps that the state [board of education had] taken (or failed to take) to

*enforce* the [hearing officer's] decision pursuant to state law." *Id.*  The district court concluded

that under those circumstances "[n]othing in the IDEA authorize[d] the parents' enforcement

suit" even though the "parents protest[ed] that this result [left] them without a remedy." *Id.*

However, the plaintiffs in *Brennan* filed their complaint – in contrast to Plaintiffs in the

case at bar, who filed their claims in the form of counterclaims – in district court without first

allowing the State Department of Education appropriate time to act and resolve the allegations

that the regional school board had not implemented aspects of the hearing officer's final decision

and order.  *See Id.* at 255-56.  As the district court there noted, "[a]lthough by all indications" the Connecticut Department of Education had in fact "been prepared to act on the parents' request," the plaintiff parents had given it less than ten days' time in which to do so before filing an enforcement action in federal court.  *Id.* at 261-62.

Further, the district court explicitly noted in *Brennan* that the plaintiff parents "*did not assert their enforcement claim under*" Section 1983 or, apparently, any federal statute other than the IDEA.  *Id.* at n.11 (emphasis added).  *Brennan* merely holds, then, that a prevailing party may not sue to enforce a hearing officer's decision *under the IDEA*, specifically the statute which is now 20 U.S.C. § 1415(i).  *See* [Doc. 67] at 16-24.  Plaintiffs in this case have, in contrast to those in *Brennan*, brought their lawsuit under Section 1983, Section 504 of the Rehabilitation Act, and the ADA rather than merely under 20 U.S.C. § 1415(i).  *Id.*  It also bears noting that in *Brennan*, the district court explicitly stated that although the plaintiff parents protested that its ruling left them without a remedy, the court found such an assertion to be untrue, as the parents in *Brennan* had filed their federal complaint without allowing the defendant board of education time to act on their request.  *Id*. at 261 (emphasis added).

Similarly, the district court's decision in *Mrs. D. v. Granby Bd. of Educ.*, 453 F.Supp.2d 569, 577 (D. Conn. 2006), which *Brennan* cites and upon which Defendant Hartford Board of Education similarly relies in its briefing, explicitly states that it had been "noted at the outset" of the case that the plaintiff parent, who had *brought a civil action as an allegedly prevailing party* and who had submitted a complaint with the Connecticut Department of Education seeking to enforce the hearing officer's order, had *not submitted any evidence to suggest the district court that this complaint had been fully addressed or resolved by the Connecticut Department of*

*Education*. *Id.* at 572, 577-78 (emphasis added) ("There is no evidence [plaintiff] has exhausted this administrative remedy or that compliance would be futile ... Accordingly, the court lacks subject matter jurisdiction to enforce the hearing officer's order.").  Further, the lawsuit was brought solely under the IDEA and not under other federal statutes, as is the one before this Court.

The Court is therefore unconvinced by Defendant Hartford Board of Education's contention that Plaintiffs, as purportedly non-aggrieved parties under the pertinent decision and order, have no right to alleged in counterclaims to a lawsuit brought against them liability for the same.

### b.      Exhaustion or Futility of Seeking Remedies

Defendant Hartford Board of Education contends that even if under other circumstances this Court *could* adjudicate Plaintiffs' Amended Counterclaims, in this instance it lacks such jurisdiction because Plaintiffs have failed to exhaust their administrative remedies prior to bringing their claims to federal court.  Defendant Hartford Board of Education raises this argument with respect to the IDEA itself, as well as with respect to Section 1983 and the ADA and Section 504 of the Rehabilitation Act.  As Defendant Hartford Board of Education acknowledges, a legal analysis "relative to the exhaustion of the IDEA remedies" and Section 1983 "applies equally to [Plaintiffs'] claims brought under" Section 504 and the ADA. [Doc. 70-1] at 16.  For reasons explicated *infra*, the Court agrees with this assessment and will address all four federal statutes together here.

The root of the IDEA's "exhaustion requirement," as it is often referred to, may be found in the specific language of 20 U.S.C. § 1415(i)(2)(A), which as discussed *supra* "provides a

cause of action to those parties who are 'aggrieved' by a 'final' decision of either an impartial due process hearing officer, if the state does not have an appeals process, or the state educational agency, if it does." *Coleman v. Newburgh Enlarged City School District*, 503 F.3d 198, 203 (2d Cir. 2007).  Under the law of this Circuit, a party's failure to exhaust the IDEA's administrative remedies is accordingly found to deprive a court of subject matter jurisdiction, barring specific exceptions discussed *infra*.  *See, e.g., Cave v. East Meadow Union Free School Dist.*, 514 F.3d 240, 245 (2d Cir. 2008).

　　As an initial matter, for reasons discussed at length *supra*, because Plaintiffs did not *bring* the lawsuit pursuant to which they filed the counterclaims which are the subject of this Motion to Dismiss, the Court finds Defendant Hartford Board of Education's exhaustion requirement, predicated upon the appeal-specific language of 20 U.S.C. § 1415, to be inapposite. Furthermore, the Court notes that Defendant Hartford Board of Education has not addressed in any specificity how Plaintiffs ought to have exhausted such a requirement, and has not addressed whether the review Plaintiffs sought and received by the state Department of Education was sufficient in this regard.

　　Nonetheless, the Court will now address and review the exhaustion requirements which Defendant Hartford Board of Education claims are applicable in the case at bar.  The Court holds that even if Plaintiffs *had* brought the civil action in question, which they did not, such exhaustion requirements would not apply for reasons discussed *infra*.

　　While in 2012 the Second Circuit acknowledged that several other circuits, including the Seventh, Ninth, and Eleventh, have held "that a failure to exhaust administrative remedies does not divest the Court of its subject matter jurisdiction but, rather, is an affirmative defense," this

circuit declined to reverse its prior holdings in order to join these other circuits in such holdings, explaining that to do so was beyond its "authority as a panel," given that it is bound by the decisions of prior panels until such time as they are overruled either by an en banc panel of the Circuit or by the Supreme Court. *Baldessarre v. Monroe-Woodbury Cent. School District*, 496 Fed. Appx. 131, 133 n.3 (2d Cir. 2012) (citing *In re Zarnel*, 619 F.3d 156, 168 (2d Cir. 2010)). Accordingly, barring applicable exceptions already accepted by this circuit, exhaustion of administrative remedies remains a jurisdictional prerequisite and not merely an affirmative defense.

The above is true regardless of whether lawsuits are brought under both the IDEA *and* other federal statutes, including the ADA, Section 504 of the Rehabilitation Act, and 42 U.S.C. § 1983. The Second Circuit has more than once addressed the "applicability of the IDEA's exhaustion requirement to federal claims presented under statutes other than the IDEA," and has concluded that it does indeed apply, rejecting any argument that a Section 1983 claim, along with other federal claims including those under the ADA and Section 504, are "not subject to the exhaustion rule," reasoning that the language of the IDEA is "sufficiently broad" as to "encompass[] complaints asserted under *any* federal statute, so long as they seek relief available under the IDEA." *Cave v. East Meadow Union Free High School District*, 514 F.3d 240, 248 (2d Cir. 2008). Accordingly, with acknowledged exceptions, "the IDEA's exhaustion rule applies to all ... federal causes of action regardless of their statutory bases." *Id.* at 249. Due to this, and as stated *supra*, the Court intends for the following discussion to pertain not solely to any exhaustion requirement Plaintiffs may have had under the IDEA, but also to any such

requirement Plaintiffs may have had under Section 1983, the ADA, and Section 504 of the Rehabilitation Act.

As briefly noted above, however, prior caselaw within this circuit has made clear that there *are* exceptions to the IDEA's exhaustion requirement.  Extenuating circumstances permit a court to review and enforce an administrative hearing officer's decision even if a plaintiff has not demonstrated (or indeed, could not demonstrate) that he or she has exhausted all available administrative remedies.  In the case at bar, for the reasons explicated below, the Court finds that Plaintiffs have adequately demonstrated both in their pleadings and in the factual record that the Court is allowed to consider in its evaluation of this Motion to Dismiss that these exceptions are both appropriate and applicable in the case at bar.  Because the Court finds that the exceptions to the general exhaustion rule apply, it need not and does not decide whether Plaintiffs have failed to first exhaust their administrative remedies.

While in general "[e]xhaustion of administrative remedies is required under the IDEA so that disputes related to the education of disabled children are first analyzed by administrators with expertise in the area who can promptly resolve grievances," this "requirement is excused ... *when exhaustion would be futile because the administrative procedures do not provide an adequate remedy*."  *M.S. v. Attica Central Schools*, 386 F.3d 107, 112 (2d Cir. 2004) (emphasis added).  "The party seeking to avoid exhaustion bears the burden of showing futility."  *Polera v. Bd. of Educ. Of the Newburgh Enlarged City School District*, 288 F.3d 478, 488 n.8 (2d Cir. 2002) (citing *Honig v. Doe*, 484 U.S. 305, 327 (1988)).

There are several relevant points of inquiry that the Second Circuit has identified in a court's examination of whether a party's "[f]ailure to exhaust administrative remedies" has or has

not "deprive[d] [a] court of subject matter jurisdiction." *P. v. Greenwich Bd. of Educ.*, No. 3:12-CV-00378, 2013 WL 1007204 at *4 (D. Conn. March 14, 2013).[6]  Generally speaking, claims of futility under this rubric ought either to allege either: (1) "a system-wide violation of the IDEA's mandates or of a district-wide policy of discrimination" against a particular group[7]; (2) "a plausible argument that the administrative process is so structurally tainted that they would not have been afforded a fair and impartial forum to present their claims," *Cave v. East Meadow Union Free School Dist.*, 514 F.3d 240, 250 (2d Cir. 2008); or (3) "whether administrative review would further the goals of developing facts, making use of available expertise, and promoting efficiency." *M.S. v. Attica Central Schools*, 386 F.3d at 113 .

The second and third points of inquiry are unambiguously applicable to the situation and facts before this Court.  The second point of inquiry involves an exploration of whether "it would be futile" for a plaintiff "to complete the administrative review process because the hearing officer had no power to correct the violation." *Id.*  In such cases, the Second Circuit has consistently held that a plaintiff's case is not subject to exhaustion of administrative remedies.

---

[6]  As the decision in *P. v. Greenwich Bd. of Educ.* notes, recent United States Supreme Court rulings – i.e., ones which were released in 2004 and 2005 – "have called into question whether the failure to exhaust administrative remedies under the IDEA deprives the court of jurisdiction, or whether [it] is an affirmative defense which may be waived if not raised." *P. v. Greenwich Bd. of Educ.*, 2013 WL 1007204 at *4. (citations omitted).  However, as *P. v. Greenwich Bd. of Educ.* discusses, in 2012 the Second Circuit nonetheless held that a district court's "holding [that] plaintiffs' failure to exhaust the IDEA's administrative remedies required dismissal of their complaint was clearly compelled by our Circuit precedent." *Id.* (quoting *Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.*, 496 Fed. Appx. 131, 133-34 (2d Cir. 2012)).

[7]  With respect to the first point of inquiry into an exception to the exhaustion rule: the Second Circuit has on repeated occasions "excused exhaustion of administrative remedies in cases that included *allegations of systemic violations*." *P. v. Greenwich Bd. of Educ.*, No. 3:12-CV-00378, 2013 WL 1007204 at *4.  (emphasis added).  As Plaintiffs are not alleging systemic violations in the case at bar and the Court finds no evidence of systemic violations in the record and pleadings before it, the Court will not focus upon or further address this point.

*Id.* (citing *Heldman v. Sobol*, 962 F.2d 148 (2d Cir. 1992); *Mrs. W. v. Tirozzi*, 832 F.2d 748 (2d Cir. 1987); *J.G. v. Bd. of Education of the Rochester City School District*, 830 F.2d 444 (2d Cir. 1987); *Jose P. V. Ambach*, 669 F.2d 865 (2d Cir. 1982).

The third point of inquiry involves an exploration of whether additional "administrative review would further the goals of developing facts, making use of available expertise, and promoting efficiency." *Id.* (citation omitted). This is because while in general an "[e]xhaustion of the administrative process allows for the exercise of discretion and education expertise by state and local agencies, affords full exploration of technical educational issues, [and] furthers development of a complete factual record," *Id.* at 112 (quoting *Polera v. Bd. of Educ. Of the Newburgh Enlarged City School District*, 288 F.3d at 488 n.8), if further administrative review would without question not serve to further any such goals, an exhaustion of administrative remedies may not be necessary – or, put another way, an exhaustion requirement would be futile.

The Court finds the Second Circuit's summarizing language in *Heldman v. Sobol*, 962 F.2d 148, 159 (2d Cir. 1992), recently quoted and discussed in *Cave v. East Meadow Union Free School District*, 514 F.3d at 249, to be instructive: "In *Heldman*, we acknowledged that the exhaustion requirement does not apply 'when the pursuit of the administrative remedies *would be futile because the agency either was acting in violation of the law or was unable to remedy the alleged injury*.'" *Cave v. East Meadow Union Free School District*, 514 F.3d at 249 (quoting *Heldman v. Sobol*, 962 F.2d at 159) (emphasis added). Given the facts alleged by Plaintiffs, the Court finds that the scenario described in *Heldman* and reiterated in *Cave* is exactly the one that is present here and, accordingly, that the exhaustion requirement ought not and does not apply to Plaintiffs in the instant case.

29

Given Defendants' alleged lack of action in the face of clear instructions contained in both the Hearing Officer's decision *and* the subsequent emails sent by the Connecticut Department of Education pursuant to its Complaint Resolution Process which explicitly stated that Defendants *must* comply with certain aspects of the Hearing Officer's decision with which they allegedly thus far had not complied, the Court, in evaluating the assertions and facts under the standards required for a motion to dismiss, finds it highly plausible that further administrative review would not further any of the goals identified by the Second Circuit over the past several decades. Along the same logical rubric, given Defendants' allegedly repeated and, moreover, allegedly advertent non-compliance with these decisions, it also seems to this Court that requiring further administrative review *by the very same entities whose prior directives and resolutions were allegedly ignored by Defendants* would be futile, as these entities' lack of power to enforce such directives and resolution (and Defendants' alleged unwillingness to fully follow or comply with them) has been sufficiently asserted and demonstrated in the record under the standards by which this Court must now view and evaluate them.

The Court thus finds that even if the exhaustion requirement were applicable here, and it is not, and even if Plaintiffs *did* fail to exhaust their administrative remedies – something on which, as noted above, this Court does not and need not take a position – further attempts to exhaust such remedies would have been futile given the facts.

### 2.    Whether Section 1983 May Be Used to Enforce the IDEA

Defendant Hartford Board of Education argues that Plaintiffs' Second Amended Counterclaim – i.e.,  Plaintiffs' claim that Defendants are liable for failing to implement the Hearing Officer's Final Decision and Order – must fail, because 42 U.S.C. § 1983 cannot be used

to enforce the IDEA.  As such, Defendant Hartford Board of Education contends that Plaintiffs' "Second Counterclaim must be dismissed with prejudice for failure to state a claim upon which relief can be granted." [Doc. 70-1] at 4.

Under Section 1983, "[e]very Person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."  In short, the statute authorizes lawsuits to enforce individual rights as well as the United States Constitution with two exceptions: it is not available "when Congress has foreclosed enforcement of the statute in the statute itself, or when a statutory remedial scheme is so comprehensive that there is an implication that it provides the exclusive remedy foreclosing all other remedies." *M.H. v. Bristol Bd. Of Educ.*, 169 F.Supp. 2d 21, 28 (D. Conn. 2001) (quoting *Mrs. W. v. Tirozzi*, 832 F.2d 748, 754 (2d Cir. 1987)).

Thus to sustain a Section 1983 action with respect to a federal statute, a plaintiff must demonstrate that the federal statute creates an individually enforceable right in the class of beneficiaries to which the plaintiff belongs.  *City of Rancho Palos Verdes, California v. Abrams*, 544 U.S. 113, 120 (2005).  Such a showing creates a rebuttable presumption that the right in question is enforceable under Section 1983, which can be defeated by a defendant's demonstration that "Congress did not intend that remedy for a newly created right ... The crucial consideration is what Congress intended."  *Id*. (internal quotation marks and citations omitted).

31

In its Motion to Dismiss, Defendant Hartford Board of Education contends that under existing case law and legal precedent, specifically a recent Supreme Court ruling in *City of Rancho Palos Verdes, California v,. Abrams*, 544 U.S. 113 (2005), "Section 1983 cannot be used to enforce the IDEA" and that, accordingly, Plaintiffs' "claim must fail." [Doc. 70-1] at 4.  Given that "the Supreme Court has on several occasions referenced the IDEA (and its predecessor) as an example of legislation that has a comprehensive statutory remedy which precludes" a Section 1983 remedy, Defendant Hartford of Education argues, Section 1983 ought to be found inapplicable in the case at bar and, accordingly, the Plaintiffs' Second Counterclaim dismissed. [Doc. 70-1] at 6.

To be sure, in its 2005 decision in *City of Rancho Palos Verdes, California v. Abrams*, the United States Supreme Court did note that in the two instances in which it had previously found that Section 1983 was "unavailable to remedy violations of federal statutory rights," the allegedly violated statutes had contained "more restrictive remedies" than those contained within Section 1983.  *City of Rancho Palos Verdes, California v,. Abrams*, 544 U.S. at 121.  To be sure as well, the Supreme Court's *City of Rancho Palos Verdes* decision stated that in all of the cases in which the Supreme Court had ever held that Section 1983 *was* "available for violation of a federal statute, [the Supreme Court has] emphasized that the statute at issue ... *did not* provide a private judicial remedy (or, in most of the cases, even a private administrative remedy) for the rights violated."  *Id.* (emphasis in original).   Plaintiffs do not dispute that the text of the IDEA provides administrative and judicial remedy; on its face the statute clearly provides that after an administrative hearing, "[a]ny party aggrieved by the findings and decision" made under various subsections of the statute "shall have the right to bring a civil action ... which action may be

brought in any State court of competent jurisdiction or in a district court of the United States,

without regard to the amount in controversy."  20 U.S.C. § 1415(i)(2)(A).  The IDEA also states

that in such circumstance such a court may "grant such relief as [it] deems is appropriate."  20

U.S.C. § 1415(i)(2)(C)(iii).

However, there is also little question that the United States Congress has exhibited

specific intent *not* to allow the judicial remedy provision contained within the IDEA to *preclude*

other sorts of judicial remedy.  The current version of the statute provides:

> *Nothing in this chapter shall be construed to restrict or limit* the rights, procedures, and
> remedies available under the Constitution, the Americans with Disabilities Act of 1990
> ..., title V of the Rehabilitation Act of 1973 ..., *or other Federal laws protecting the rights
> of children with disabilities*, except that before the filing of a civil action under such laws
> seeking relief that is also available under this subchapter, the procedures ... shall be
> exhausted to the same extent as would be required had the action been brought under this
> subchapter.

20 U.S.C. § 1415(l) (emphasis added).  This particular provision was initially added by Congress

in 1986 to the IDEA's predecessor legislation.  *M.H. v. Bristol Bd. Of Educ.*, 169 F.Supp. 2d. at

29. In enacting this provision, Congress expressly overruled a United States Supreme Court

decision that had been issued two years prior, *Smith v. Robinson*, 468 U.S. 992 (1984) – one of

the cases to which the Supreme Court was making reference in *City of Rancho Palos Verdes*

when it discussed the two instances in which it had found Section 1983 inapplicable.  In *Smith v.

Robinson*, the Supreme Court had held that it was apparent that Congress intended the

predecessor legislation to the IDEA to be the exclusive avenue through which a claim could be

pursued, and therefore plaintiff could not be allowed to circumvent its administrative remedies

by relying on Section 1983 as a remedy.  *Id.*  In adding the above-quoted provision to the IDEA

in 1986, Congress explicitly "stated that the enactment was to reaffirm ... the viability of ... 42

33

U.S.C. § 1983, and other statues as separate vehicles for ensuring the rights of handicapped children." *M.H. v. Bristol Bd. Of Educ.*, 169 F.Supp. 2d. at 29 (quoting H.R. Rep. No. 296, 99th Cong., 1st Sess. 4 (1985)).

In the years between 1986 and the present, including those years subsequent to the Supreme Court's 2005 ruling in *City of Rancho Palos Verdes,* the Second Circuit has repeatedly recognized Congressional intent in the language of the IDEA to allow for IDEA-related actions under Section 1983 to go forward, holding that, "[i]n light of [its] clear legislative history, we hold that parents are entitled to bring a [Section 1983] action based on the alleged violations of" what was then the predecessor legislation to the IDEA. *Mrs. W. v. Tirozzi*, 832 F.2d at 755. For example, in 2006, the Second Circuit held that "the IDEA creates rights in favor of disabled children and their families enforceable through" Section 1983, *D.D. ex rel. V.D. v. New York City Bd. Of Educ.*, 465 F.3d 503, 511 n.10 (2d Cir. 2006). In 2007, the Second Circuit stated that "[i]t is well-settled that, while the IDEA itself does not provide for monetary damages, plaintiffs may sue pursuant to [Section 1983] to enforce its provisions – including the right to a FAPE – and to obtain damages for violations of such provisions." *Smith v. Guilford Bd. Of Educ.*, 226 Fed. Appx. 58 (2d Cir. 2007).

This Court therefore disagrees with Defendant Hartford Board of Education's contention that subsequent to the Supreme Court's 2005 ruling in *City of Rancho Palos Verdes*, it is even remotely clear, or for that matter even particularly plausible, that Section 1983 may not be used to enforce the IDEA. The Court need only point to the Second Circuit holdings mentioned in the above paragraph – issued *subsequent* to the United States Supreme Court decision in *City of*

34

*Rancho Palos Verdes* – in order to demonstrate that Defendant Hartford Board of Education is in error on this point.

Despite this, however, the Court notes that a 2008 decision issued by the Second Circuit, *Streck v. Board of Educ. Of East Greenbush School Dist.*, severely limits those instances in which a plaintiff may rely on Section 1983 in order to pursue monetary damages for violations of the IDEA, as Plaintiff does here. *See Streck v. Board of Educ. Of East Greenbush School Dist.*, 280 Fed. Appx. 66, 68 (2d Cir. 2008). In *Streck*, the Second Circuit held that because plaintiffs had failed "to allege a *denial* of procedural safeguards or administrative remedies," they could not bring suit under Section 1983 for violations of the IDEA. *Id* (emphasis added). The Second Circuit cited being "afforded a hearing before an impartial hearing officer and review by a state review officer" as examples of how the plaintiffs in *Streck* had not been denied procedural remedies. *Id.*

Like the plaintiffs in *Streck*, Plaintiffs in the case at bar received an administrative hearing under the IDEA. However, the Plaintiffs in this matter maintain in their Amended Second Counterclaim that Defendants "*failed to implement* the Hearing Officer's [d]ecision" in a variety of ways. [Doc. 67] at 21 (emphasis added). Plaintiffs further contend that on August 18, 2011, Parent "complained to the Connecticut Department of Education pursuant to Connecticut General Statutes § 10-76h(d)(2) that [Defendants] were not implementing the order of the Hearing Officer," and that the Connecticut Department of Education, after a Complaint Resolution Process review, found that Defendants "were not in compliance" with the Hearing Officer's order, but stated that it was "not able to force them to implement" that order. *Id.* at 21-22. Plaintiffs further state that the Connecticut Department of Education "indicated during its

35

enforcement efforts that [it] was not successful in forcing [Defendants] to comply and that [it] did not have the power to order" such compliance, along with "other appropriate relief to the Student to compensate him for the extraordinary delay in implementing the Hearing Officer's [d]ecision and outright refusal to implement" that decision.  *Id.* at 22.

　　In order to support these claims, Plaintiffs provided the Court with records of an email correspondence between Attorney Gail Mangs, an Educational Consultant for the Connecticut Bureau of Special Education, Attorneys Michael McKeon and Melinda Kaufmann, who represent Defendants, and Attorney David Shaw, who represents Plaintiffs.  *See* [Doc. 33-7].  In late April of 2012, Attorney Mangs wrote to the counsel for the parties to this case regarding the "two corrective actions ordered in Complaint No. 12-0153 which was filed by the [Plaintiff] Parent in response to the districts' failure to implement the hearing officer's order in Final Decision and Order No. 11-0154."  *Id.* at 2.  Attorney Mangs stated that despite the Connecticut Board of Education's explicit direction that these actions be resolved on or before January 23, 2012 – roughly three months prior to the date on which she sent this email – neither had been completed. *Id.*

　　Explaining that "complaints regarding an allegation that a hearing officer's order is not being implemented do not allow the investigator to create new orders that would result in corrective actions that move completely beyond the original order," and that, therefore, neither the transportation-related issues nor the compensatory education Plaintiffs had sought and the Connecticut State Board of Education had directed Defendants provide could or would be *ordered*, Attorney Mangs then directed the parties to "convene a PPT on or before May 7, [2012]," or to take other appropriate action.  *Id.* at 3.  Attorney Mangs concluded:

Please note that the normal procedure followed when corrective actions issued through the Complaint Resolution Process are not completed as ordered is to refer the issue to the Attorney General's office.  As the hearing officer's decision is being appealed, it is expected that the Parent will notify this office as to whether failure to complete the corrective actions will be addressed through the appeal or should be sent to the Attorney General's office.

*Id.*

On May 8, 2012, a day after the deadline that had been set for a PPT had elapsed, Attorney Mangs wrote to counsel again, stating that she had "still not heard about Corrective Action No. 1 ... Please provide a response." *Id.* at 2.  Attorney Shaw responded to this email the following day, informing Attorney Mangs that Defendants had "not complied with Corrective Action No. 1." *Id.*  At the end of that week, Attorney Mangs wrote twice to all parties, stating that "[i]f the Boards do not intend to address [C]orrective [A]ction no. 1, the matter will be referred to the Attorney General's office for action." *Id.* at 1.  As Plaintiffs summarized: given that "state law does not permit" the Connecticut State Board of Education to order "appropriate remedial relief, [Attorney Mangs] indicated that the issuance of an order requiring" such relief, "if any, would have to come from an order of th[e] Court." [Doc. 33-1] at 3.

The question that this Court must answer, then, is whether, under relevant caselaw involving Section 1983 and the IDEA and the standards by which a court must examine a 12(b)(1) motion to dismiss – pursuant to which all ambiguities and inferences must here be drawn in Plaintiffs' favor – the situation and evidence set forth by Plaintiffs arises to a level at which the Plaintiffs may be allowed to present additional evidence that they have been denied procedural safeguards and plausibly make such a claim.  *See, e.g., See Streck v. Board of Educ. Of East Greenbush School Dist.*, 280 Fed. Appx. 66.

In this inquiry, the Court has found some of the authority upon which the *Streck* decision relies to be instructive. *Streck* cites another Second Circuit case to support its holding that those circumstances in which a plaintiff may bring suit under Section 1983 for violations of the IDEA are limited: *Taylor v. Vermont Dept. Of Educ.*, 313 F.3d 768 (2d Cir. 2002). The language from *Taylor* which *Streck* cites and summarizes is as follows: "[I]f plaintiffs can demonstrate that there is no relief available to them through the administrative process, they may [seek monetary damages for IDEA provisions pursuant to §1983]." *Streck v. Board of Educ. Of East Greenbush School Dist.*, 280 Fed. Appx. at 68 (quoting *Taylor v. Vermont Dept. Of Educ.*, 313 F.3d at 790). This Court holds that, as a preliminary matter and under the standards by which it must examine a motion to dismiss, the situation Plaintiffs have presented and addressed in their Amended Second Counterclaim, fall within that category. The administrative procedural safeguards, such as they are alleged to have been implemented, are failing Plaintiffs, there is no reasonable relief available to them under the administrative process, and consequently Plaintiffs ought to be able to bring suit under Section 1983 to enforce these provisions of the IDEA, including any monetary and any other damages that are available under this statute, as addressed *infra*.

### 3.    Applicability of Section 504 of the Rehabilitation Act and the ADA

Plaintiffs aver in their First Amended Counterclaim that Plaintiff Student has a disability under the ADA and Section 504 of the Rehabilitation Act in that he has been diagnosed with Autism. [Doc. 67] at 17. They further aver that Defendants "have failed and refused to implement the hearing decision" and have "taken actions that interfere with the implementation of the hearing decision, such as refusing to authorize the independent consultant time to fully evaluate the Student's educational program and placing limitations on the scope of the activities

of the consultant" – and that Defendants have done so in part due to the fact that the Plaintiff

Parent "has acted to enforce his rights under the ADA and Section 504." *Id.* at 18.  Accordingly,

Plaintiffs contend, Defendants "have deliberately refused to fund the agreed upon IEP and failed

to implement the orders of the hearing officer because the Parent vigorously exercised his rights

and the rights of his son" and, "[a]s a result of the deliberate indifference of employees of

[Defendants] and their interference with the Student's rights, the Student has been denied his

right to have the hearing decision implemented and to receive an appropriate special education

program." *Id.* at 18-19.[8]

 Plaintiffs therefore are not seeking in their First Amended Counterclaim new or different

services or accommodation than that which in relevant part the due process Administrative

Hearing Officer and the Connecticut Department of Education deemed appropriate for Student

under the IDEA.  Rather, they are seeking to enforce their rights under these IDEA-based

determinations that have already taken place, and to make out a claim for Defendants' alleged

interference with the enforcement of such rights.

 With respect to the entirety of Plaintiffs' First Amended Counterclaim, Defendant

Hartford Board of Education asserts that "Plaintiffs have failed to state a claim upon which relief

can be granted for violation of a Section 504 or the ADA based on the alleged failure to

implement the Hearing Officer's decision." [Doc. 70-1] at 18.  Specifically, Defendant Hartford

Board of Education asserts that Plaintiffs "cannot establish that any alleged failure to implement

---

[8] Plaintiffs succinctly summarize these claims in their Objection to Defendant Hartford
Board of Education's Motion to Dismiss, averring that Defendant Hartford Board of Education
"was aware of the Order of the Administrative Hearing Officer and the Directive from the
[Connecticut State Department of Education] to implement the Hearing Officer's Order, yet ha[s]
acted with deliberate indifference toward the Plaintiffs by refusing to provide the ordered relief
and FAPE because they vigorously enforced their rights under the [IDEA]." [Doc. 77] at 54.

the hearing officer's decision was solely because of the student's disability," and, accordingly, their claim ought to fail as a matter of law.  *Id* (emphasis added).

"[Section 504] of the Rehabilitation Act and Title II of the ADA offer essentially the same protections for people with disabilities." *Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d 98, 113 (2d Cir. 2001).  Section 504, which may be found at 29 U.S.C. § 794(a), provides that "[n]o otherwise qualified individual with a disability ... shall, *solely by reason of* her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a) (emphasis added).  Title II of the ADA, which may be found at 42 U.S.C. § 12132 et seq., provides in relevant part that "no qualified individual with a disability shall, *by reason of* such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (emphasis added).  Indeed, "[a]part from the Rehabilitation Act's limitation to denials of benefits 'solely' by reason of disability and its reach of only federally funded - as opposed to 'public' - entities, the reach and requirements of both statutes are precisely the same." *Weixel v. Board of Educ. of City of New York*, 287 F.3d 138, 146 n.6 (2d Cir. 2002).[9] Defendant Hartford Board of Education has accepted for the purposes of this Motion to Dismiss that it and Defendant New Britain Board of Education are subject to both statutes.  *See* [Doc. 70-1] at 18-19.

---

[9]   "While Title II applies to all state and municipal governments," Section 504, in contrast, "applies only to those governmental agencies or departments that accept federal funds, and only those periods during which the funds are accepted." *Garcia v. S.U.N.Y. Health Services Center of Brooklyn,* 280 F.3d at 113 n.2.

Under both Section 504 and the ADA, "the denial of a FAPE to a disabled student can constitute covered disability discrimination." *Brennan v. Regional School District No. Bd. Of Educ.*, 531 F.Supp. 2d 245, 278-80 (stated specifically in reference to Section 504, but noting accord with the parties' joint assertion that "the analysis under the ADA is identical to the analysis under the Rehabilitation Act").  Indeed, the federal regulations promulgated under Section 504 with respect to education even provide that a "recipient that operates a public elementary or secondary education program shall provide a [FAPE] to reach qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap." 34 C.F.R. § 104.33; *see also, e.g., J.D. v. Pawlet School Dist.*, 224 F.3d 60, 70 (2d Cir. 2000) (discussing same).  "Because denial of a FAPE is an actionable claim under [the] IDEA, there is obvious overlap between Section 504[, the ADA,]  and [the IDEA]." *Brennan v. Regional School District No. Bd. Of Educ.*, 531 F.Supp. 2d at 279.  "Nonetheless, there is at least one important difference between claims" under the IDEA and the other two statutes: unlike the IDEA, Section 504 and the ADA "only remed[y] acts of *intentional* discrimination against the disabled." *Id* (emphasis in original).

As applied to this case, then, Plaintiffs must present evidence that Defendants were "at minimum[] deliberately indifferent to a strong likelihood that [Student's] federal rights would be violated." *Id.*  As this district court noted in 2008, some courts within this Circuit, including the District of Connecticut, "have gone so far as to say that [a] plaintiff must show something akin to 'bad faith or gross misjudgment.'" *Id.* at 279 n.37. (citing *B.L. v. New Britain Board of Educ.*, 394 F.Supp. 2d 522, 540 (D. Conn. 2005) and *L.G. v. Board of Educ. Of Hyde Park Cent. Sch. Dist.*, 368 F.Supp.2d 313, 334 (S.D.N.Y. 2005)).  Plaintiffs seem to adopt the steeper of the two

standards in their briefing, and write that in order for this Court to evaluate the viability of their

First Amended Counterclaim under the ADA and Section 504, the Court must "determine

whether sufficient facts are alleged supporting Plaintiffs' contention that [Defendant Hartford

Board of Education] exhibited bad faith or gross misjudgment by refusing to implement the

Hearing Officer's Order in an attempt to intimidate Plaintiffs or to coerce them into not

exercising their rights" under the IDEA. [Doc. 77] at 54 (citations and internal quotation marks

omitted).

     In general, plaintiffs who seek to state a claim for disability under the ADA "must

demonstrate that (1) they are 'qualified individuals' with a disability; (2) that the defendants are

subject to the ADA [or Section 504]; and (3) that plaintiffs were denied the opportunity to

participate in or benefit from defendants' services, programs, or activities, or were otherwise

discriminated against by defendants, by reason of plaintiffs' disabilities."  *Henrietta D. v.

Bloomberg*, 331 F.3d 261, 272-73 (2d Cir. 2003).  The elements for a prima facie discrimination

claim under Section 504 are nearly identical, with the previously noted exception that Plaintiffs

must demonstrate not only that discrimination took place *by reason of* such disabilities, but rather

that the denial of relevant benefits or exclusion from relevant participation had been "*solely

because of* his or her disability." *Bryant v. New York State Educ. Dept.*, 692 F.3d 202, 216 (2d

Cir. 2012) (emphasis added).  Defendant Hartford Board of Education accepts for the purpose of

this Motion to Dismiss that Student shall be considered a "qualified individual" under the first

prong of both tests; given this, the Court will only address the third prong – i.e., whether Student

has been discriminated against by Defendants *by reason of* or *solely by reason of* his disability.

Defendant Hartford Board of Education avers that "[u]nder no circumstances (and certainly not under the facts alleged) can [Plaintiffs] meet th[is] third prong," because a claim that Defendant Hartford Board of Education "failed to implement a due process hearing officer's decision simply cannot be transformed into a claim of discrimination against an individual *solely* because of his disability." [Doc. 70-1] at 19 (emphasis added). Defendant Hartford Board of Education thus adopts the language of Section 504, which includes the word "solely," over that of the ADA, which omits it.

The Court finds, however, under the standards by which it must use in ruling upon a motion to dismiss, that the alleged facts and claims presented in Plaintiffs' First Amended Counterclaim, along with the other evidence provided therewith, *could* support a contention both that Student was denied the opportunity to a FAPE, and that the deliberate indifference and other alleged actions and inactions occurred, both by reason of Student's disabilities as well as solely because of them.[10]

---

[10]   The Court also notes that decisions rendered in this Circuit such as *Henrietta D. v. Bloomberg*, 331 F.3d 261, which Defendant Hartford Board of Education cites in its briefing, *see, e.g.,* [Doc. 70-1] at 19, have stressed with respect to fact patterns and claims somewhat different from those currently before this Court that under certain circumstances, a "disability cause" for denial of benefits to plaintiffs can be "enough to sustain th[ose] plaintiffs' claims," and that "differing explanations offered by the parties for the plaintiffs' inability to obtain the benefits to which they are facially entitled are not mutually exclusive." *Henrietta D. v. Bloomberg*, 331 F.3d at 278. The Second Circuit has further expressed general caution in "interpreting the 'by reason of ... disability' requirement," explaining that it is mindful with respect to reasonable accommodation issues of the fact that Title II of the ADA, along with Section 504, seek "principally to ensure that disabilities do not prevent access to public services where the disabilities can reasonably be accommodated," and that it is "thus reluctant to interpret the 'by reason of such disability' language of the ADA and Rehabilitation Act, both remedial statutes, so narrowly that they deprive the plaintiffs of reasonable accommodation to which the plaintiffs clearly would be entitled if the social services were functioning as intended." *Id.* at 279.

The Court now turns to a somewhat puzzling twist in the briefing and claims raised with regard to this section of Plaintiffs' First Amended Counterclaim and Defendant Hartford Board of Education's Motion to Dismiss.  Defendant Hartford Board of Education originally and understandably assumed under the facts and claims recited in Plaintiffs' First Amended Counterclaim that Plaintiffs there sought either to assert a basic discrimination claim under 42 U.S.C. § 12132 and Section 504, or to assert what was essentially a retaliation claim under these statutes.  However, in their Objection to Defendant Hartford Board of Education's Motion to Dismiss, Plaintiffs claim that they "do not assert that Defendants' refusal to implement the Order of the Hearing Officer violates 42 U.S.C. § 12132 or that Defendants retaliated against the Plaintiffs in violation of 42 U.S.C. § 12203(a)," under which "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner of an investigation, proceeding, or hearing under this chapter." [Doc. 77] at 50-51; 42 U.S.C. § 12203(a).

Rather, Plaintiffs contend in their Objection to the Motion to Dismiss, their First Amended Counterclaim merely "alleges that by refusing to implement the order of the administrative hearing officer the Defendants *interfered* with ... Plaintiffs' rights secured by ... 42 U.S.C. § 12203(b) and [Section] 504." [Doc. 77] at 51 (emphasis in original).  This Circuit has not yet thoroughly addressed or analyzed an interference claim, and therefore there is little controlling caselaw for the Court to follow.[11]  Plaintiffs acknowledge this trend, writing that

_____

[11]     Indeed, the Second Circuit has not thoroughly addressed or analyzed an interference provision of the ADA or the Rehabilitation Act.  When these aspects of the statutes are occasionally mentioned in decisions rendered by the Court of Appeals, they are usually done so chiefly as side notes accompanying larger discussions of retaliation claims under the same

"[m]ost published courts of appeals cases note the existence of the interference provision of the ADA and/or [Section] 504 alongside the retaliation provision but analyze only the retaliation provision." [Doc. 77] at 52.  Both Plaintiffs and Defendant Hartford Board of Education, therefore, largely cite the relatively scant caselaw from other Circuits that does discuss and address interference within these statutes.  While such caselaw is both useful and informative, the Court finds that the statutory text alone is sufficient to guide its interpretation of the interference provision's applicability.[12]

Under the ADA, at 42 U.S.C. § 12203(b), "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other

---

statutes.  *See, e.g.*, *Regional Economic Community Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 53-45 (2d Cir. 2002); *Valtchev v. City of New York*, 400 Fed. Appx. 586, 589 (2d Cir. 2010) ("The ADA further makes it unlawful for an employer to 'coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of ... any right granted or protected by [the ADA] ... For a claim of retaliation to survive under the ADA, a plaintiff must, inter alia, provide evidence sufficient to make out a prima facie case....") (emphasis added).

[12]   The Court notes that it believes, however need not decide, that Plaintiffs *could* for the purposes of a Motion to Dismiss make out a claim for discriminatory animus under the facts as alleged in the First Amended Counterclaim.  The elements of discriminatory animus, or a retaliation claim, under either Section 504 or the ADA are "(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action."  *Weixel v. Board of Educ. of City of New York*, 287 F.3d 138, 148 (2d Cir. 2002) (citations omitted); *Regional Community Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 54 (2d Cir. 2002).  Plaintiffs have alleged that they were engaged in protected activity; that Defendants were aware that Plaintiffs exercised their protected rights, that Defendants took adverse actions against Plaintiffs, which interfered with Plaintiffs' exercise of such rights; and that there is a causal connection between Plaintiffs' protected activity and the adverse action undertaken by Defendants.

individual in the exercise or enjoyment of, any right granted or protected by this chapter."  42 U.S.C. § 12203(b) (emphasis added).

Section 504 has essentially "the same protections," as Plaintiffs write, "because 29 U.S.C. § 794a incorporates the remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964," *see* [Doc. 77] at 51, which provides in relevant part with respect to education: "[n]o recipient or other person shall *intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering* with any right or privilege ... because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing."  34 C.F.R. § 100.7(e) (emphasis added).

Contending that these "federal statutes and regulatory provisions" manifestly prohibit interference with the assertion or exercise of a person's rights as granted by both the ADA and Section 504, Plaintiffs therefore "invoke the protection of" such statutory "provisions on the ground that ... Defendants' refusal to implement the Hearing Officer's Order was a deliberate attempt to discourage ... Plaintiffs from exercising their rights" under the IDEA. [Doc. 77] at 51-52.

The Court addresses each statute in turn.  Given that 34 C.F.R. § 100.7(e) provides that no person "shall *intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering* with any [applicable] right or privilege" that individual holds,  34 C.F.R. § 100.7(e) (emphasis added), any interference Plaintiffs can reasonably assert Defendants undertook under this statute must be alleged to have been motivated by the fact that an individual – here, presumably, Parent – "has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this part."  *Id.*  Plaintiffs' allegations in

46

the First Amended Counterclaim do stem from actions Defendants allegedly took in response to Parent "vigorously exercis[ing] his rights and the rights of his son" through the administrative review and appeal process. [Doc. 67] at 18.

The language of 34 C.F.R. § 100.7(e) is very clear that certain actions – i.e., intimidation, threatening, coercion, or discrimination – are prohibited when they are undertaken for the purpose of interfering with an individual's relevant rights.  However, interference through other means is not prohibited, or even addressed, in this statute.  Plaintiffs do not allege in their First Amended Counterclaim, or, indeed, in either of their Counterclaims, that Defendants intimidated, threatened, or coerced Plaintiffs.  Rather, they allege that Defendants and their employees have demonstrated "deliberate indifference" by "deliberately refus[ing] to fund the agreed-upon IEP and fail[ing] to implement the orders of the hearing officer because the Parent vigorously exercised his rights and the rights of his son," as well as by refusing "to implement such critical aspects of the hearing decision as allowing the independent consultant sufficient time to properly evaluate the Student, properly train school staff and recommend necessary changes to the program, and failing to implement critical relief ... such as the compensatory education instruction required by" the hearing officer's order, as well by "refus[ing] to pay for transportation related to the evaluations ordered by the hearing officer," all of which has "interfered with the implementation of a [FAPE] to the Student" and, moreover, has "interfered with his right to have the Order of the hearing officer implemented."  [Doc. 67] at 18-19.

As Plaintiffs do not allege that Defendants intimidated, threatened, or coerced Plaintiffs, the only possible means by which Plaintiffs can make out an interference claim under 34 C.F.R. § 100.7(e), and thus under Section 504, is to contend that Defendants *discriminated* against

Plaintiffs for the purpose of interfering with Plaintiffs' assertion of their rights.  Under the standards by which this Court must evaluate a Motion to Dismiss, the Court concludes that the facts alleged by Plaintiffs support a plausible claim that at least some of Defendants' purported actions and deliberate indifference were motivated by discrimination and were undertaken in order to interfere with Plaintiffs' right to a FAPE, and moreover that such actions and deliberate indifference were the result of either bad faith or gross misjudgment.  *See Brennan v. Regional School District No. Bd. Of Educ.*, 531 F.Supp. 2d at 279 and 279 n.37 (the standard for this type of claim is "at minimum[] deliberately indifferent to a strong likelihood that [Student's] federal rights would be violated," and noting that some courts within this Circuit, including the District of Connecticut, "have gone so far as to say that [a] plaintiff must show something akin to 'bad faith or gross misjudgment.'") (citations omitted).

Similarly with respect to the interference language contained within the ADA, mentioned and cited *supra*, the Court finds that given the alleged facts contained with Plaintiffs' First Amended Counterclaim, Plaintiffs can make out a plausible interference claim under the ADA, under which, again, "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or *protected by this chapter*."  42 U.S.C. § 12203(b) (emphasis added).

In regard to the last four words contained in this quotation, which the Court has emphasized, Defendant Hartford Board of Education contends that because "an IDEA due process hearing officer is empowered by the IDEA, not the ADA and/or Section 504, to issue

orders," any "orders contained in th[at] Hearing Officer's decision cannot be seen as rights

possessed by [Plaintiffs] under the ADA and/or Section 504" – and "[t]hus, even accepting

[Plaintiffs'] unsupported allegation that [Defendant Hartford Board of Education] did not

implement the hearing officer's decision, this would not implicate rights that [Plaintiffs] have

under either the ADA or Section 504." [Doc. 85] at 4.

The Court disagrees.  The language in 42 U.S.C. § 12203(b) cuts a significantly more

broad and sweeping scope than one which would merely encompass those rights which are

granted *by* the ADA – rather, it pertains to all those rights which are *protected* by the ADA.  As

has already been established *supra*, the ADA has been held by courts within this Circuit to apply

to and protect an individual's right to a FAPE, as has Section 504, and therefore the Court finds

that the facts as alleged in Plaintiffs' First Amended Counterclaim can under the standards by

which this Court must evaluate a Motion to Dismiss plausibly make out a claim for interference

under 42 U.S.C. § 12203(b).

### 4.    The Applicability of Section 1983 and Compensatory Damages Thereunder to Enforce the ADA or Section 504

Defendant Hartford Board of Education contends in its Motion to Dismiss that, "[t]o the

extent that [Plaintiffs] are attempting to use [Section] 1983 to enforce the ADA and/or Section

504," Plaintiffs' First Amended Counterclaim must fail. [Doc. 70-1] at 19.  Defendant Hartford

Board of Education avers that, as "both the ADA and Section 504 provide comprehensive

remedies, the same analysis" concerning the applicability of Section 1983 to enforce the IDEA

"applies equally to the ADA and Section 504." *Id.*  The Court agrees with that assessment, and

therefore incorporates and cites the prior section of this Ruling in which it addresses the

49

applicability of Section 1983 to the IDEA, including the review of caselaw concerning Section 1983's history and generally broad-sweeping reach.

The Court notes as well that this Circuit has explicitly allowed both for the application of Section 1983 to enforce claims brought under the ADA and Section 504, and for the seeking of Section 1983 damages.  For example, in *Weixel v. Board of Educ. of City of New York,* 287 F.3d 138, the Second Circuit addressed a situation in which certain "[p]laintiffs' claims for damages pursuant to Section 1983 [had been] dismissed by the district court on the grounds that," because the lower court had found that plaintiffs had "not plead any violations of their rights secured by ... Section 504/ADA ...,' they had failed to allege a 'cognizable claim for damages pursuant to [Section] 1983.'"  *Weixel v. Board of Educ. of City of New York,* 287 F.3d at 151.  The Second Circuit reasons, however, that because it had concluded, contrary to the district court's holding, that plaintiffs *had* successfully "stated causes of action under Section 504/ADA ..., the district court [had] erred in dismissing their claims for damages under Section 1983."  *Id.*  As well, in *Hargrave v. Vermont*, 340 F.3d 27 (2d Cir. 2003), the Second Circuit affirmed a plaintiff's claims which were brought "pursuant to [Section 1983]" and which alleged that certain provisions of a state law "violate[d] Title II of the ADA and Section 504 of the Rehabilitation Act."  *Hargrave v. Vermont*, 340 F.3d at 32, 39.

The Court is similarly unconvinced, given the caselaw cited *supra*, that Plaintiffs cannot make a claim for compensatory damages for IDEA violations subject to Section 504 and the ADA, or that this may not be done under the umbrella of a claim brought pursuant to Section 1983.  "Plaintiffs seek an award of ... compensatory damages for violations of their rights alleged" in their First Amended Counterclaim under both the ADA and Section 504. [Doc. 77] at

50

59 n.16.[13]  In general, a plaintiff may recover money damages under either Title II of the ADA or

under Section 504 by demonstrating "discriminatory animus or ill will for Title II damage claims

brought against states," and for a showing of "deliberate indifference ... for [Section] 504

claims."[14]  *Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d at 115; *see also*

*Powell v. National Bd. of Medical Examiners*, 364 F.3d 79, 89 (2d Cir. 2004) ("In order to obtain

money damages as a remedy for ... alleged violation of Title II of the ADA, plaintiff would need

to show ... such violation was motivated by either discriminatory animus or ill will stemming

from plaintiff's disability.  In order to recover monetary damages under the Rehabilitation Act ...

plaintiff would need to show that any violation resulted from 'deliberate indifference' to the rights

the disabled enjoy under the Act.") (internal citation omitted).

>    **5.    Whether Plaintiffs Are Entitled to Seek Compensatory or Punitive
>         Damages under Section 1983, and the General Applicability of Section
>         1983 to Defendants as Possible Municipalities**

Plaintiffs state both in their Amended Counterclaims and in their Opposition to

Defendant Hartford Board of Education's Motion to Dismiss that it seeks an award of both

---

[13]    While in their Amended Counterclaim, Plaintiffs state that they seek "[c]ompensatory and punitive damages under the ADA and [Section] 504 against Defendants ... for the deprivation of [Plaintiffs'] rights secured by the ADA, [Section] 504[,] and [Section] 1983," *see* [Doc. 67] at 23, Plaintiffs explicate in their Objection to Defendant Hartford Board of Education's Motion to Dismiss that there merely seek compensatory damages for violations of their rights as alleged in the first Amended Counterclaim under the ADA and Section 504, and that Plaintiffs do not seek punitive damages for violations of these two statutes. [Doc. 77] at 59.

[14]    As the Second Circuit explains, the standard of "deliberate indifference" exists for such damages under Section 504 "since the Rehabilitation Act was enacted pursuant to Congress's Spending Clause authority and therefore does not require that damage remedies be tailored to be congruent and proportional to the proscriptions of the Fourteenth Amendment." *Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d at 115.

compensatory and punitive damages under Section 1983 for violations of Plaintiffs' rights as alleged the Second Amended Counterclaim. *See* [Doc. 66] at 23; [Doc. 77] at 59 n.16.

### a. Applicability of Section 1983

While the Court notes the arguments raised in Defendant Hartford Board of Education's Reply to Plaintiffs' Objection to its Motion to Dismiss that the actions of Defendants' employees constituting an "alleged refusal to implement the hearing officer's decision" ought not and cannot be seen as an "official policy" of the Defendants, *see* [Doc. 85] at 12, and therefore Defendants cannot be subject to Section 1983 for any purpose under Plaintiffs' claims, the Court disagrees with such contentions, given the allegations made by Plaintiffs, along with the evidence submitted and the standards by which a Motion to Dismiss must be evaluated.

Defendant Hartford Board of Education appears to assume without explicitly stating in its briefing that Defendants, local Connecticut school boards, ought to be considered municipalities for the purposes of a court's evaluation of the applicability of Section 1983 and any potential damages therewith; it writes that Plaintiffs' allegations are "insufficient to establish a policy, practice or custom of [Defendant Hartford Board of Education] of failing to implement [the] hearing officers' decisions" – and that Plaintiffs' Second Amended Counterclaim, therefore, ought to be dismissed. [Doc. 85] at 13.  The Court accepts the premise that Defendants ought to be considered municipal entitles for the purpose of a Section 1983 analysis, and note that as long ago as 1989 the Second Circuit found that "an inquiry into Connecticut's education system supports the conclusion that local school boards are municipal bodies for purposes of the Eleventh Amendment."  *Rosa R. v. Connelly*, 889 F.2d 435, 437 (2d Cir. 1989).

52

It is true that while "[m]unicipalities and other local government bodies, including school districts, are considered 'persons' within the meaning of [Section] 1983," courts have found that municipalities "cannot be held liable pursuant to [Section] 1983 *solely because* of the discriminatory actions of one of its employees." *Back v. Hastings on Hudson Union Free School Dist.*, 365 F.3d 107, 128 (2d Cir. 2004) (emphasis added).  Rather, for such entities "[m]unicipal liability under [Section] 1983 occurs, if at all, at the level of policy-making, and cannot be premised on a theory of respondeat superior." *Ciralo v. City of New York*, 216 F.3d at 242 (citation omitted).  Thus, while "a local government may not be sued under [Section] 1983 for an injury inflicted solely by its employees or agents[, ...] it is when execution of a government's policy or custom ... inflicts an injury that the government as an entity is responsible under [Section] 1983." *Monell v. Department of Soc. Servs.,* 436 U.S. 658, 694 (1978).

Thus a municipality's failure to act under certain circumstances can constitute a policy and consequently give rise to liability under Section 1983.  *See, e.g., Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir 1992); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).  In order to be actionable, such a failure to act must rise to the level of deliberate indifference.  *City of Canton, Ohio v. Harris*, 489 U.S. at 389.  As the Second Circuit stated in 2004, a defendant must have "evinced such deliberate indifference to the allegations of discrimination as to show that the defendant intended the discrimination to occur." *Back v. Hastings on Hudson Union Free School Dist.*, 365 F.3d 107, 128 (2d Cir. 2004) (citation and internal quotation marks omitted).  As our sister court stated well:  "Plaintiffs need not show that the municipality had an explicitly stated rule or regulation; instead an inference that such a policy existed may be drawn

from circumstantial evidence." *L.B. v. Board of Education of the City of New York*, 99 F.Supp. 2d 411, 418 (S.D.N.Y. 2000) (citations omitted).

The Supreme Court of the United States has held that there is no heightened pleading standard for civil rights actions alleging municipal liability under Section 1983. *Leatherman v. Turrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993). Instead, a plaintiff need do little "more than plead a single instance of misconduct," and plaintiff's complaint need include little more than "a short plain statement of the claim showing that the pleader is entitled to relief," *Id.* at 167-168.

The Court concludes that, under the facts alleged in Plaintiffs' Amended Answer and Counterclaims and for reasons discussed at length *supra*, a claim that the Board evinced deliberate indifference to the allegations of discrimination as to show that the defendant intended the discrimination to occur is plausible, and consequently survives a motion to dismiss.

### b.  Compensatory Damages Claims under Section 1983

The Second Circuit has previously "found damages to be an available remedy in actions" against school boards brought pursuant to [Section] 1983 for violations of the IDEA." *Polera v. Board of Educ. of Newburgh Enlarged City School Dist*., 288 F.3d at 483; *see also Smith v. Guilford Bd. of Educ.*, 225 Fed. Appx. 58, 63 (2d Cir. 2007) ("It is well-settled that, while the IDEA itself does not provide for monetary damages, plaintiffs may sue pursuant to [Section] 1983 to enforce its provisions – including the right to a FAPE – and to obtain damages for violations of such provisions."); *V.D. v. New York City Bd. Of Educ.*, 465 F.3d 503, 511 n.10 (2d Cir. 2006) ("the IDEA creates rights in favor of disabled children and their families enforceable through [Section] 1983...."). There is therefore little question, given that this Court has found

54

Section 1983 applicable and given caselaw already cited *supra*, that Plaintiffs are entitled to seek compensatory damages under Section 1983.  However, Defendant Hartford Board of Education contests Plaintiffs' ability to claim punitive damages against a municipal entity under Section 1983.

**c.    Punitive Damages Claims under Section 1983**

In *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981), the United States Supreme Court confronted the question of whether Section 1983 permits the award of punitive damages against a municipality, and unequivocally held that it does not.  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. at 259; *see also, e.g., New Windsor Volunteer Ambulance Corps., Inc. v. Meyers*, 442 F.3d 101, 122 ("a municipality itself is immune from a claim for punitive damages..."); *Ciraolo v. City of New York*, 216 F.3d 236, 242 (2d Cir. 2000) ("despite what might be the salutary effects of punitive damages in a case such as this, we are constrained by the Supreme Court's holding in *Newport*....").

Consequently, the Court grants Defendant Hartford Board of Education's Motion to Dismiss in part, and holds that Plaintiffs cannot seek punitive damages under Section 1983.

## IV.    DEFENDANT HARTFORD BOARD OF EDUCATION'S MOTION TO RE-OPEN DISCOVERY

Defendant Hartford Board of Education has also brought a Motion to Re-Open Discovery, [Doc. 79], in order to allow it to perform discovery as to Plaintiffs' Amended Counterclaims, which Defendant Hartford Board of Education writes Plaintiffs "conveniently filed ... after the expiration of the discovery period." [Doc. 79] at 1.  Defendant Hartford Board of Education contends that "[i]t would be highly prejudicial to require" Defendant Hartford Board of Education to defend itself "against a claim for monetary and punitive damages without even

the benefit of knowing what the plaintiff is claiming [it] failed to implement from the Hearing Officer's decision." *Id.*

Plaintiffs filed an Objection to Defendant Hartford Board of Education's Motion to Re-Open Discovery, [Doc. 81], raising along with other reasons for such Objection undue and potentially harmful delay not only within this case but to Student.  Plaintiffs also assert that it is their "present intention to use only the documents attached to their Motion to Supplement the Record" – i.e., Exhibits A through UU – and that, moreover, the "information needed to establish that a disputed issue of material fact exists as to the Amended Counterclaim is uniquely within the custody and control of" Defendant Hartford Board of Education," as it pertains to whether this Defendant "is responsible for the delay in the implementation of the Hearing Officer's Order, whether [it] took all reasonable actions to protect [Student's] safety when it because clear [he] was being exposed to safety risks while he was being transported to and from compensatory education services, [and] whether the wrongful actions alleged constitute actions" undertaken by this Defendant.  [Doc. 81] at 2-3.  Plaintiffs also assert that Defendant Hartford Board of Education's "assertion that it is uncertain what responsibility, if any, it has for the violations of rights outlined in the Amended Counterclaim is farfetched." *Id.* at 3.

In general, a case scheduling order or discovery "schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  While the Court is sympathetic to Plaintiffs' concerns and arguments, under the circumstances, the Court finds that Defendant Hartford Board of Education has established good cause for re-opening discovery. Notwithstanding Plaintiffs' arguments, it seems both conceivable and possible that there are documents or other evidence that is not currently in Defendant Hartford Board of Education's

possession or within its current knowledge that would be relevant to those allegations and facts

made and addressed in Plaintiffs' Amended Counterclaims.  The Court thus orders a re-opening

of discovery for all parties, limited to the Plaintiffs' Amended Counterclaims.  This discovery

must be completed on or before **Monday, December 9, 2013**.

**V.**     **CONCLUSION**

For the reasons discussed *supra*, Plaintiffs' Motion to Supplement the Administrative

Record [Doc. 38] is GRANTED.  Defendant Hartford Board of Education's Motion to Dismiss

[Doc. 70] is GRANTED IN PART and DENIED IN PART.  It is denied in all aspects except as

to its claims concerning punitive damages, which are granted.  Defendant Hartford Board of

Education's Motion to Re-Open Discovery [Doc. 79] is GRANTED, and discovery will re-open

immediately, and close on **Monday, December 9, 2013**.

The deadline for any Motions for Summary Judgment is **Friday, January 17, 2014**.

The foregoing is SO ORDERED.


Dated: New Haven, Connecticut
        October 8, 2013




                                              /s/Charles S. Haight, Jr.
                                              Charles S. Haight, Jr.
                                              Senior United States District Judge