UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| A., by his Parent and Next Friend Mr. A., and MR. A., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 3:11-CV-01381-GWC |
| HARTFORD BOARD OF EDUCATION and NEW BRITAIN BOARD OF EDUCATION, | ) ) ) ) | |
| Defendants. | ) ) | |
| ——————————————————— | ) ) | |
| NEW BRITAIN BOARD OF EDUCATION, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 3:11-CV-01431-GWC |
| J.A., a Student, and MR. A., Parent and Next Friend of J.A., | ) ) ) | |
| Defendants. | ) ) | |

**OPINION AND ORDER RE: ATTORNEYS' FEES AND COSTS**
(Docs. 198, 260)

Under the Individuals with Disabilities Education Act ("IDEA"), "the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B). In its July 2016 Opinion and Order on the parties' cross-motions for summary judgment, the court concluded that— although Plaintiffs were not successful on all of their claims in *A. v. Hartford Board of Education*, No. 11-0154 (Conn. Dep't of Educ. Aug. 2, 2011) (the "due process case")—they did obtain sufficient favorable determinations to qualify as "prevailing parties." *A. v. Hartford Bd.*

*of Educ.*, No. 3:11-CV-01381-GWC, 2016 WL 3950079, at *34 (D. Conn. July 19, 2016).[1]  The

court invited the parties to file supplemental briefs on the question of reasonable fees and costs in

light of the court's rulings on the substantive issues presented in the cross-motions for summary

judgment.  *Id.* at *36.  All parties have since filed supplemental briefs and responses.

(Docs. 244, 245, 246, 252, 253, 254, 255, 256, 259.)[2]

## I.      Legal Standards Governing Fee Awards

### A.      IDEA Cases

The court recounted the legal standards governing fee awards in IDEA cases in its

July 19, 2016 Opinion and Order.  *See A.*, 2016 WL 3950079, at *34–35.  The IDEA authorizes

the court to award "reasonable" attorneys' fees to the prevailing party.  20 U.S.C.

§ 1415(i)(3)(B).  The IDEA requires that, if fees are awarded, they "shall be based on rates

prevailing in the community in which the action or proceeding arose for the kind and quality of

services furnished.  No bonus or multiplier may be used in calculating the fees awarded under

this subsection."  *Id.* § 1415(i)(3)(C).  The statute further directs the court to reduce the amount

of fees awarded if it finds that:

> (i) the parent, or the parent's attorney, during the course of the action or
> proceeding, unreasonably protracted the final resolution of the controversy;
> (ii) the amount of the attorneys' fees otherwise authorized to be awarded
> unreasonably exceeds the hourly rate prevailing in the community for similar
> services by attorneys of reasonably comparable skill, reputation, and experience;

---

[1] Familiarity with the July 19, 2016 Opinion and Order is presumed.

[2] The supplemental briefing is in addition to the approximately 250-page collection of briefing on the question of fees and costs filed in connection with the summary judgment motions. (*See* Doc. 126-1 at 100–31; Doc. 136 at 59–63; Doc. 152 at 43–55; Doc. 167 at 46–77; Doc. 169 at 53–58; Doc. 173 at 31–48; Doc. 181-1 at 18–35; Doc. 195 at 38–79; Doc. 196 at 68–91; Doc. 197 at 35–36; Doc. 198-1; Doc. 199 at 11; Doc. 210; Doc. 211; Doc. 217; Doc. 218.) As the court previously suggested, the fee litigation in this case is nearly as voluminous as the litigation on the merits. *See A.*, 2016 WL 3950079, at *33 (fee litigation "approaches the level of 'mania'").

(iii) the time spent and legal services furnished were excessive considering the nature of the action or proceeding; or

(iv) the attorney representing the parent did not provide to the local educational agency the appropriate information in the notice of the complaint described in subsection (b)(7)(A).

*Id.* § 1415(i)(3)(F).  Any such reductions, however, "shall not apply in any action or proceeding if the court finds that the State or local educational agency unreasonably protracted the final resolution of the action or proceeding or there was a violation of this section."  *Id.* § 1415(i)(3)(G).

### B.   Section 504, ADA, and § 1983 Actions

In its July 2016 Opinion and Order, the court analyzed Plaintiffs' § 504, ADA, and § 1983 claims.  *See A.*, 2016 WL 3950079, at *27–33.  The court granted summary judgment to the Hartford Board of Education (HBOE) and the New Britain Board of Education (NBBOE) on each of those claims.  *Id.* at *36.  Like the IDEA, the statutes governing § 504, ADA, and § 1983 claims include fee-shifting provisions, authorizing awards to the "prevailing party."  *See* 29 U.S.C. § 794a(b) (Section 504); 42 U.S.C. § 12205 (ADA); 42 U.S.C. § 1988(b) (Section 1983).  Each of those fee-shifting provisions permits the court to award a "reasonable" fee to the prevailing party.  As discussed below, since Defendants prevailed on these claims, no fees are awarded.

### C.   Methodology for Calculation of Fee

HBOE and Plaintiffs dispute the methodology that the court should use to calculate attorneys' fees under the IDEA.  Plaintiffs contend that under *Perdue v. Kenny A. ex. rel. Winn*, 559 U.S. 542 (2010), the court must use the "lodestar approach."  (*See* Doc. 126-1 at 103 n.18.) HBOE asserts that, notwithstanding *Perdue*, the court should follow the approach taken in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, in which the Second

3

Circuit found the "lodestar" metaphor unhelpful, and advanced a multifactor analysis including the twelve so-called *Johnson* factors to arrive at a "reasonable hourly rate" and a "presumptively reasonable fee." 522 F.3d 182, 190 (2d Cir. 2008). The twelve *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 186 n.3 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)).

The court concludes that best course is to avoid becoming fixated on any particular method, and instead to consider both *Arbor Hill* and *Perdue* in resolving the fees question. *See Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (relying on both *Arbor Hill* and *Perdue*); *Echevarria v. Insight Med., P.C.*, 102 F. Supp. 3d 511, 515 n.2 (S.D.N.Y. 2015) (discussing *Arbor Hill* and *Perdue*, and ultimately deciding to consider both); *K.L. v. Warwick Valley Cent. Sch. Dist.*, No. 12 Civ. 6313(DLC), 2013 WL 4766339, at *6 (S.D.N.Y. Sept. 5, 2013) (citing both *Perdue* and *Arbor Hill*). However, since 20 U.S.C. § 1415(i)(3)(C) specifically directs the court not to apply any bonus or multiplier, the court will not—as it analyzes fees related to the due process hearing—consider the "less objective factors" like risk of litigation, complexity of issues, and skill of the attorneys. *Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir. 1999).

To determine the amount of a prevailing party's fee award, the court begins by calculating the "lodestar": "the product of a reasonable hourly rate and the reasonable number of

hours required by the case." *Millea*, 658 F.3d at 166 (citing *Perdue* and *Arbor Hill*).  Calculation

of the "lodestar" creates a "presumptively reasonable fee," and, absent "extraordinary

circumstances," the court must calculate the lodestar figure "as a starting point." *Id.*  The fee

applicant must "submit appropriate documentation to meet 'the burden of establishing

entitlement to an award.'" *Fox v. Vice*, 563 U.S. 826, 838 (2011) (quoting *Hensley v. Eckerhart*,

461 U.S. 424, 437 (1983)).

## II.     Reasonable Hourly Rate

"[D]etermination of a reasonable hourly rate 'contemplates a case-specific inquiry into

the prevailing market rates for counsel of similar experience and skill to the fee applicant's

counsel.'" *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 59 (2d Cir. 2012) (quoting

*Farbotko v. Clinton Cty. of N.Y.*, 433 F.3d 204, 209 (2d Cir. 2005)).  This inquiry may "include

judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates

prevailing in the district." *Id.* (quoting *Farbotko*, 433 F.3d at 209); *see also Perdue*, 559 U.S.

at 551 (lodestar analysis looks to "the prevailing market rates in the relevant community"

(quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984))).

Consistent with its prior indication, *see A.*, 2016 WL 3950079, at *35, the court uses

current rather than historic hourly rates. *See Reiter v. MTA N.Y.C. Transit Auth.*, 457 F.3d 224,

232 (2d Cir. 2006); *Messier v. Southbury Training Sch.*, No. 3:94-CV-01706 (EBB), at 2–3

(D. Conn. Oct. 18, 2011), ECF No. 1124 (absent finding that delay in litigation was caused by

party seeking fees or that current rate does not reflect loss attributable to delay, current rate is

appropriate for calculating lodestar amount in protracted litigation).  Here, the court cannot

conclude that any delay in this case was caused by Plaintiffs. The court will therefore use current hourly rates.[3]

### A.       Prevailing Attorney Market Rate

At the outset of this litigation in August 2011, Attorney Shaw stated that his rate was $450 per hour for his services from May 2010 to that date. (Doc. 142-2 at 58.) Attorney Shaw has not attested to his customary hourly rate, or whether his fee in this case was fixed or contingent.[4] But he contends that a reasonable current hourly rate for his work on this case is $500—a figure that he says is his current (2014) billing rate for "similarly complex matters." (*See* Doc. 126-4 at 6, ¶¶ 8–9.) He further contends that the $500 rate is consistent with awards in other federal cases in this district. Attorney Shaw also relies on the affidavits of Attorneys John C. Yavis, Jr. and Lawrence W. Berliner. (Doc. 126-5.) HBOE maintains that Attorney Shaw's rate should be $350. (*See* Doc. 173 at 37; Doc. 152 at 45; Doc. 210 at 6; Doc. 252 at 9.) NBBOE asserts that the current prevailing rate is $400, and that the appropriate hourly rate should be $375. (Doc. 181-1 at 25; Doc. 199 at 11; Doc. 211 at 6; Doc. 246 at 9.) Against that backdrop of the parties' divergent positions, the court turns to its case-specific inquiry.

This case required substantial time and labor, at the administrative stage, the compliance stage, and in these court proceedings.[5] The administrative stage itself was lengthy, with 13 days

---

[3] Because using current rates compensates Attorney Shaw for the passage of time, the court will not award any compensation related to the preparation of Plaintiffs' Motion for Prejudgment Interest (Doc. 40). Plaintiffs concede that these 28.1 hours should be excluded. (Doc. 244 at 6.)

[4] Attorney Shaw and Parent both indicate that Parent has been unable to pay for Attorney Shaw's work, suggesting that Parent was unlikely to be able to pay a fixed fee. (*See* Doc. 126-1 at 110 n.21; Doc. 195 at 45.)

[5] The court discusses time and effort in general terms here. Specific analysis of the hours expended is included below. *See G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 433 n.17 (S.D.N.Y. 2012) (some of the *Johnson* factors, such as time and labor required,

of hearings spanning five months. The parties dispute whether all that time was necessary, but the presence of two school boards increased the time required, there were at least 12 different issues for resolution (as identified by the Hearing Officer), and extensive evidence was introduced as the parties attempted to show, among other things, either Student's progress or lack of progress during the school years at issue.

The compliance and court litigation stages were similarly time and labor intensive. Just 16 days after the August 2, 2011 hearing decision, Attorney Shaw contacted the Connecticut State Department of Education (CSDE) alleging failure to comply. The CSDE process continued—with questions at issue regarding multiple alleged failures to comply—even as litigation in this court commenced in September 2011. And, as the court's previous rulings in this case suggest, the litigation in court has been extensive. All stages included difficult questions, although the complexity appears to have increased over time. (*Accord* Doc. 126-5 at 8–9 (Attorney Berliner's opinion of increasing complexity).)[6] Substantial skill was required to navigate this increasingly fact-intensive case through its various stages.

The "most critical" factor in the court's fees analysis is the "degree of success obtained." *Hensley*, 461 U.S. at 436. The court addresses that factor below in its analysis of the number of hours expended. *See Favors v. Cuomo*, 39 F. Supp. 3d 276, 291 n.8 (E.D.N.Y. 2014) (reasoning that degree of success is logically considered in assessing the reasonable number of hours expended).

---

and time limitations imposed, more logically relate to the reasonable number of hours rather than the reasonable hourly rate).

[6] Some elements of this case have also posed novel questions. In the court's view, however, the main factor driving the difficulty of this case is that it has been highly fact-intensive. *See G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 433–44 (S.D.N.Y. 2012) ("IDEA cases generally involve voluminous records and are fact-intensive.").

Attorney Shaw is a 1973 graduate of the University of Connecticut School of Law, and has been in practice since 1974 with a focus on cases involving the civil rights of persons with disabilities. (Doc. 126-4 at 1, ¶¶ 1–2.) With more than 40 years of legal experience, Attorney Shaw has been involved in numerous such cases. (*See id.* ¶ 3.) As noted above, in support of his fee request, Attorney Shaw relies on the affidavits of Attorneys John C. Yavis, Jr. and Lawrence W. Berliner.[7] Attorney Yavis is a 1961 graduate of Yale Law School and has practiced law in Connecticut since that time. (Doc. 126-5 at 2.) Attorney Yavis practiced principally in the area of complex civil litigation from the late 1970s through 2003. (*Id.* at 2–3.) He has served as a special master, mediator, arbitrator, and has participated in setting attorney and paralegal billing rates at his firm. (*See id.* at 3.) On the basis of his experience, Attorney Yavis opines that the prevailing hourly rate currently charged in complex civil litigation by Connecticut attorneys with more than 40 years of litigation experience is within the range of $500 to $550. (*Id.*)

Attorney Berliner has practiced law since 1983, and has concentrated in the fields of special education law and disability rights law since that time. (*Id.* at 6.) He served in the Connecticut State Office of Protection and Advocacy for Persons with Disabilities from 1983 to 2000, and has been in private practice since 2000. (*Id.* at 6–7.) As of January 1, 2013, Attorney Berliner's hourly rate is $400. (*Id.* at 7.) Attorney Berliner opines that the prevailing market rate for attorneys practicing special education law in Connecticut is between $350 and $400 per hour, for attorneys with between 17 and 32 years of practice, but that the rate varies depending on experience, expertise, and the complexity of the matter. (*Id.* at 8.) Attorney Berliner is familiar with Attorney Shaw's background and experience, and has reviewed materials from this case as

---

[7] HBOE urges the court to discount Attorney Yavis's opinion in its entirety, arguing that he does not practice in the area of special education, and that his firm is not comparable to Attorney Shaw's practice. (Doc. 173 at 38.) The court considers Attorney Yavis's opinion for what it is worth in light of all of the additional opinions and evidence.

well as decisions in other cases before this court. (*See id.* at 8–9.) Based on Attorney Shaw's experience and expertise and the novelty and complexity of the issues in this case, Attorney Berliner's opinion is that the prevailing hourly market rate for Attorney's Shaw's work on this case is $500. (*Id.* at 9–10.)

In addition to the opinions of Attorneys Shaw, Yavis, and Berliner, the court considers the rates awarded in prior cases.[8] The court approved an hourly rate of $250 for Attorney Shaw in the IDEA case of *C.G. ex rel. Mr. & Mrs. G. v. New Haven Board of Education*, 988 F. Supp. 60 (D. Conn. 1997). *C.C. ex rel. Mrs. D. v. Granby Board of Education*, 453 F. Supp. 2d 569 (D. Conn. 2006), was an IDEA case in which Attorney Shaw requested a rate of $375 and the court awarded a rate of $315. One year later, the court awarded that same rate in another IDEA case, *P. ex rel. Mr. & Mrs. P. v. Newington Board of Education*. 512 F. Supp. 2d 89, 116 (D. Conn. 2007). *M.K. ex rel. Mrs. K. v. Sergi* was a novel and complex IDEA case in which

---

[8] The court focuses principally on IDEA cases within the District of Connecticut. Attorney Shaw also cites multiple non-IDEA cases, which the court collects here for completeness: *Barnes Grp. v. Does*, No. 12cv1688(JBA), 2014 WL 580896, at *1 (D. Conn. Feb. 12, 2014) (awarding $500 hourly rate for Chicago-based partner with technical and Russian language skills); *Barati v. Metro-North R.R. Co.*, 939 F. Supp. 2d 153, 156 (D. Conn. 2013) (awarding rate of $525 in "unique" Federal Rail Safety Act and Federal Employer Liability Act case to experienced attorney who was a "leading specialist in the law governing railroad employees' rights"); *Valley Hous. Ltd. P'ship v. City of Derby*, Civ. No. 3:06CV1319(TLM), 2012 WL 1077848, at *4–5 (D. Conn. Mar. 30, 2012) (awarding rate of $485 in civil rights case to attorney with 40 years of experience whose most recent hourly billing rate was $525); *Serricchio v. Wachovia Sec., LLC*, 706 F. Supp. 2d 237, 255–56 (D. Conn. 2010) (awarding rate of $465 in USERRA case because of attorney's "extensive experience, high reputation, and remarkably successful results"); *Muhammed v. Martoccio*, No. 3:06-cv-1137(WWE), 2010 WL 3718560, at *4–5 (D. Conn. Sept. 13, 2010) (awarding $500 rate in police use-of-force case to attorney with "substantial experience in litigating criminal and civil cases"); *Pappas v. Watson Wyatt & Co.*, No. 3:04CV304(EBB), 2008 WL 45385, at *5 (D. Conn. Jan. 2, 2008) (awarding a $400 rate in employment retaliation case to attorney with over 20 years of experience); *Booth v. Waltz*, No. HHDX04CV106011749S, 2014 WL 783547, at *10 (Conn. Super. Ct. Jan. 27, 2014) (awarding $575 hourly rate for seasoned New Jersey-based lead counsel in complicated business-dissolution case).

Attorney Shaw requested a $400 rate and the court awarded a $375 rate, noting Attorney Shaw's undisputed expertise in this area of practice.  578 F. Supp. 2d 425, 428 (D. Conn. 2008).

*Messier v. Southbury Training School* is not an IDEA case, but it was prosecuted by Attorney Shaw as lead counsel, and involves substantial analysis regarding a fee award.  *Messier* was a long-running class action suit (filed in 1994) challenging conditions, services, and placement at an institution for the mentally disabled.  In 2015, after more than 20 years of litigation, the court entered an order on attorneys' fees.  The court had ruled that it would use current prevailing market rates, but observed that counsel's fee application for billing during the first 16 years of the litigation did not account for increases in prevailing market rates over time.  The highest hourly rate sought during the last four years of the litigation was $500.  The court found that all of the requested rates (including the $500 rate) were "somewhat in excess of the then-applicable prevailing market rates at any particular time" and that they exceeded "what the record fairly shows counsel has received in similar matters."  No. 3:94-CV-1706 (EBB), 2015 WL 1439288, at *5 (D. Conn. Mar. 27, 2015), *appeal docketed*, No. 15-1552 (2d Cir. May 11, 2015).  But the court did not make the 20% downward adjustment that defendants sought "because any such modification would be nullified by the complementary upward adjustment—also of about 20%—that would be required to update all of counsel's past billing to the now-higher prevailing market rates." *Id.*

*Doe v. Darien Board of Education* was a "unique and difficult" civil rights case, but it was not an IDEA case and "did not require highly specialized knowledge of the IDEA, disability law, or the public school system."  No. 3:11cv1581 (JBA), 2015 WL 8770003, at *3 (D. Conn. Dec. 14, 2015).  In that case, the court concluded that $450 was a reasonable rate for the

Plaintiffs' lead attorney, who had 35 years of jury trial experience. *Id.* at *3–4.[9] *P.J. v. State of Connecticut* is a "complex and contentious" IDEA class action that was commenced in 1991 and prosecuted by Attorney Shaw; in that case, Magistrate Judge Martinez concluded that Attorney Shaw's requested $500 hourly rate was unreasonable, and that a $450 hourly rate was appropriate. No. 2:91-cv-180(RNC) (D. Conn. Mar. 31, 2016), ECF No. 803.[10]

In light of the considerations outlined in 20 U.S.C. § 1415(i)(3)(C), *Arbor Hill*, and *Perdue*, and based on the court's review of the circumstances in this case and the rates awarded in prior cases, the court concludes that the reasonable hourly rate is $450. This rate is below Attorney Yavis's opinion and Attorney Shaw's own opinion, but it is generally consistent with Attorney Berliner's opinion as to the prevailing market rate for experienced attorneys practicing special education law in Connecticut. The IDEA cases cited above involving Attorney Shaw provide valuable data points over the course of almost 20 years.[11] The most recent data point— Judge Martinez's recent recommendation in *P.J.*—includes a thorough analysis of many of the issues and authorities discussed here, and strongly suggests that $450 is a reasonable rate.

---

[9] Attorney Shaw was also involved in the *Doe* case. The court concluded that there was no evidence that Attorney Shaw had any specialized experience in the area of (non-IDEA) civil rights litigation, and awarded a $350 hourly rate. *Id.* at *6.

[10] Objections to the Magistrate Judge's recommended ruling are currently pending before District Judge Robert N. Chatigny.

[11] Rate of $250 in 1997 (*C.G.*); rate of $315 in 2006 and 2007 (*C.C.* and *P. ex rel. P.*); rate of $375 in 2008 (*M.K.*); and rate of $450 in 2016 (*P.J.*). Notably, in the four most recent cases from that list, the courts have discounted the rate Attorney Shaw requested by approximately five to 15%. An award of $450 in this case would be a 10% discount in the requested $500 rate. HBOE suggests that the increase in rates between 1997 and 2006 works out to a judicially approved increase of about 3% per year. (Doc. 173 at 37.) That calculation might be slightly different if one accounts for the other data points, but the court notes that applying a 3% annual increase to the $375 rate awarded in 2008 results in a rate very close to $450 by 2014.

Attorney Shaw argues that the court should award a rate above the $450 rate in *P.J.* because, he says, the analysis in that case is based in part on the mistaken conclusion that the court in *Messier* applied a $450 hourly rate for all of the work done by Attorney Shaw. (Doc. 244 at 10.) The court disagrees. First, the analysis in *P.J.* relied only in part on *Messier*; the Magistrate Judge's careful analysis included many other authorities in addition to the court's own familiarity with the prevailing rates in the community. Second—and more importantly— the *Messier* court explicitly found a $500 hourly rate to exceed the prevailing market rate and the rates Attorney Shaw had received in similar matters.

NBBOE asserts that the court should award a rate below the $450 rate awarded in *P.J.* because *P.J.* was an "extraordinary" class action suit, whereas this case was a "relatively straightforward and routine administrative due process hearing." (Doc. 253 at 7.) The analysis of the hourly rate in *P.J.* was focused on the objective factors to arrive at the prevailing hourly rate. The court finds those same factors relevant to the rate in this case.

Consistent with 20 U.S.C. § 1415(i)(3)(C), the $450 hourly rate that the court is awarding does not include any "bonus" or "multiplier." The rate applies for the calculation of the legal fee for Attorney Shaw's work during the administrative stage before the Hearing Officer. Of course, there is no such restriction on "bonuses" or "multipliers" for Attorney Shaw's work on the § 504, ADA, and § 1983 claims litigated as part of this case. Nevertheless, the court will use a single (current) rate for all stages of this case. The rate the court is awarding is already in the top tier of rates awarded in the District of Connecticut, and none of the "less objective factors" weigh strongly in favor of an even higher rate in this case.

### B.    Paralegal Rate

Plaintiffs also seek compensation for the work of a paralegal, Cheryl Smith, at an hourly rate of $150.  (Doc. 126-1 at 130.)  The boards contend that the paralegal rate claimed by Plaintiffs is excessive.  (Doc. 173 at 45; Doc. 181-1 at 32.)  Plaintiffs insist that the $150 rate for Ms. Smith, is reasonable, in light of her two decades of experience and responsibilities. (Doc. 196 at 88–90; Doc. 195 at 73–74.)  This court has in recent cases concluded that $140 is a reasonable paralegal rate, and will apply that rate in this case.  *See Doe*, 2015 WL 8770003, at *6 (awarding $140 rate for Attorney Shaw's paralegal); *Crawford v. City of New London*, No. 3:11-cv-1371 (JBA), 2015 WL 1125491, at *6 (D. Conn. Mar. 12, 2015) (applying $140 rate for Attorney Shaw's paralegal).

## III.    Reasonable Number of Hours

Before delving into the analysis of the hours expended in this matter, the court notes the following.  In its July 19, 2016 Opinion and Order, the court remarked upon the extraordinary volume of the summary judgment filings in this case (exceeding 700 pages of legal memoranda alone), and observed that these cases have been "over-litigated and over-briefed." *A.*, 2016 WL 3950079, at *33, 35.  The court holds to that conclusion here.  Recognizing that ruling, Attorney Shaw has made several concessions in the hours that he claims.  (*See* Doc. 244.)  Those concessions are discussed below.

### A.    Attorney Shaw

Plaintiffs have submitted records indicating that, through October 31, 2014, Attorney Shaw spent a total of 1,215 hours on all stages of this case (including the administrative hearing, monitoring implementation of the Hearing Officer's decision, and litigation in this court).

(*See* Doc. 126-4 at 8–25; Doc. 198-3 at 1–5; Doc. 244-2; Doc. 244-3.)[12]  NBBOE and HBOE both assert that the hours claimed by Attorney Shaw are excessive.  (*See* Doc. 136 at 62; Doc. 152 at 46; Doc. 173 at 39; Doc. 245 at 10; Doc. 246; Doc. 252; Doc. 253.)  In his September 2, 2016 Supplemental Brief, Attorney Shaw makes several concessions which, by the court's calculations, brings his total requested hours down to about 860.  (*See* Doc. 244.)  The court finds it helpful to divide its analysis of the reasonable number of hours expended by Attorney Shaw into sections corresponding to the major stages or tasks in this case.

### 1.    Administrative Hearing / Due Process Case

The administrative hearing itself took 13 hearing days (although not all full days) over the months from December 2010 to April 2011.  Attorney Shaw billed 440.6 hours for his work associated with that hearing, beginning with advice rendered to Parent in May 2010 and drafting the hearing request in August 2010, and ending with reviewing the Hearing Officer's August 2, 2011 Final Decision and Order (the "hearing decision"), and advising Parent.  (Doc. 126-4 at 8–17.)  Recognizing the court's holding that too much time has been spent on this case, Attorney Shaw seeks recovery for 90% of the 440.6 hours billed (about 396.5 hours).  (Doc. 244 at 4.)  HBOE and NBBOE contend that only a fraction of the 440.6 hours should be compensated, arguing generally that Plaintiffs achieved only limited success (*see* Doc. 136 at 62; Doc. 152 at 50–52; Doc. 181-1 at 31; Doc. 211 at 11; Doc. 246 at 3–5; Doc. 253 at 8), and challenging specific line items in Attorney Shaw's billing records (*see, e.g.*, Doc. 152 at 46–50; Doc. 181-1 at 30).[13]

---

[12] Attorney Shaw spent more time on this case after October 2014, but is not seeking reimbursement for that additional time.  (Doc. 244 at 2 n.1; Doc. 244-1 ¶¶ 4–5.)

[13] In their most recent filings, NBBOE and HBOE take somewhat different positions. NBBOE insists that the 440.6 billed for the due process stage of this case is "patently absurd." (Doc. 253 at 9.)  (Presumably NBBOE's position is the same even in light of Plaintiffs'

The court begins with the general issue of Plaintiffs' degree of success in the due process case. HBOE and NBBOE argue that the Hearing Officer ruled against HBOE on only three of the 12 issues, and against NBBOE on only five of those 12 issues. (Doc. 152 at 50; Doc. 181-1 at 28.) They also argue that Plaintiffs obtained different and much less relief than they requested. (Doc. 152 at 51.) Attorney Shaw maintains that Plaintiffs need not have prevailed on each of their pre-hearing requests to receive a fully compensatory fee, and that Plaintiffs in fact obtained substantial relief. (*See, e.g.,* Doc. 126-1 at 116–17.)

A party need not prevail on all issues to be a "prevailing party." *See Kassim v. City of Schenectady*, 415 F.3d 246, 256 (2d Cir. 2005) (discussing district court's authority to reduce fee awarded to a prevailing plaintiff by reason of plaintiff's "partial or limited success"); *G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 424 (S.D.N.Y. 2012); *M.K. ex rel. Mrs. K. v. Sergi*, 554 F. Supp. 2d 233, 243–45 (D. Conn. 2008). The court has already determined that, even though Plaintiffs were not successful on all of their claims in the due process case, they are the prevailing parties. *A.*, 2016 WL 3950079, at *34. The issue is whether the court should equitably reduce Plaintiffs' fee award on account of "partial or limited success." *Kassim*, 415 F.3d at 256.

Here, Plaintiffs' success in the due process case was limited in some respects. Plaintiffs showed that Student's programs in the 2009–2010 and 2010–2011 school years were inappropriate, but were not successful in showing that the 2008–2009 program was inappropriate. (*See* Doc. 19-1 at 19, ¶¶ 1–3.) Plaintiffs also failed to obtain Student's placement

offer to discount the hours by 10%.) HBOE now seems to be more focused on which school board should pay for the hours expended. (*See* Doc. 252 at 8.) The court addresses that latter issue in its discussion of apportionment, below.

at the Connecticut Center for Child Development (CCCD). (*See id.* ¶ 4.) And Plaintiffs failed to

obtain an in-home program coordinated by a Board Certified Behavior Analyst. (*Id.* ¶ 5.)[14]

Because Plaintiffs' success in the due process case was limited, the court analyzes

"whether the unsuccessful claims can be separated out from the successful ones." *G.B. ex rel.*

*N.B.*, 894 F. Supp. 2d at 425. That decision requires the court's exercise of discretion, focusing

on the degree of success obtained rather than by "a mathematical approach comparing the total

number of issues in the case with those actually prevailed upon." *Id.* (quoting *Hensley*, 461 U.S.

at 435 n.11). As the *Hensley* Court noted:

> It may well be that cases involving such unrelated claims are unlikely to arise
> with great frequency. Many civil rights cases will present only a single claim. In
> other cases the plaintiff's claims for relief will involve a common core of facts or
> will be based on related legal theories. Much of counsel's time will be devoted
> generally to the litigation as a whole, making it difficult to divide the hours
> expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series
> of discrete claims. Instead the district court should focus on the significance of the
> overall relief obtained by the plaintiff in relation to the hours reasonably expended
> on the litigation.

*Hensley*, 461 U.S. at 435. Ultimately, "[w]here a plaintiff has obtained excellent results, his

attorney should recover a fully compensatory fee." *Id.*

Here, it is somewhat difficult to separate Plaintiffs' successful claims from those that

were not successful. Plaintiffs' (unsuccessful) challenge to the 2008–2009 school year might

arguably be considered separate from his challenge to the 2009–2010 and 2010–2011 school

years, but the facts relating to 2008–2009 overlapped substantially with Plaintiffs' other claims.

Information about that year was important to determine the sufficiency of Student's

programming for the following years. Critically, the 2008–2009 school year was the first time

---

[14] In its July 2016 Opinion and Order, the court reversed and remanded on that narrow
issue. *A.*, 2016 WL 3950079, at *15. The court analyzes Plaintiffs' success in the court case
separately below.

that Dr. Mayville evaluated Student. In 2009, the Planning and Placement Team (PPT) considered Dr. Mayville's report, convened to discuss Student's proposed attendance at Classical, and modified the IEP. Plaintiffs' (unsuccessful) request that Student be placed at CCCD is similarly difficult to separate from the other claims. Deciding whether any alternative placement was warranted depended in part on determinations about the adequacy of the program at Classical.

Here, the best approach is to focus on the significance of the overall relief that Plaintiffs obtained in the due process case. The hearing decision awarded Plaintiffs relatively modest remedies. After finding that the 2009–2010 and 2010–2011 programs failed to supply Student with a free and appropriate public education (FAPE), the Hearing Officer ordered that Student be placed at HBBOE's middle school, that an independent consultant be brought in, and that a board certified behavior analyst be retained to work with Student. The Hearing Officer also ordered independent OT and PT evaluations, 180 hours of private compensatory education with transportation, and reimbursement for Dr. Mayville's 2010 evaluation. (*See* Doc. 19-1 at 19–20.) The package of compensation, services, and supports required by the hearing decision constitutes relatively minor relief, and weighs in favor of equitably reducing the fee for the due process case. This simply was not a claim justifying almost 450 hours of attorney time.[15]

The court will apply a one-third overall reduction in the hours spent at the due process stage. In addition to the question of whether to equitably reduce the fee based on degree of

---

[15] The parties have very different positions about the importance to Plaintiffs that Student be placed at CCCD. NBBOE contends that placement at CCCD was Plaintiffs' "primary objective." (Doc. 246 at 5.) Plaintiffs assert that, throughout the course of the administrative proceedings, Parent has "adjusted his assessment" about CCCD, and agreed that Student's placement at NBBOE's public schools would be acceptable, provided that some changes to the IEP were made and that sufficient outside oversight was in place. (*See* Doc. 126-1 at 115.) Even if the importance of placement at CCCD changed over time for Plaintiffs, failure to obtain that relief further supports the conclusion that the relief Plaintiffs obtained was relatively modest.

success, the court has carefully considered the specific challenges raised by the school boards.[16]

The court's one-third percentage reduction accounts for those specific challenges. *See Marion S.*

*Mishkin Law Office v. Lopalo*, 767 F.3d 144, 150 (2d Cir. 2014) (district courts are not obligated

to undertake line-by-line review of fee applications, and may instead exercise discretion and use

a percentage deduction "as a practical means of trimming fat" (quoting *McDonald ex rel.*

*Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir.

2006))). In sum, for the due process stage of the proceedings, the court finds 294 hours of the

440.6 to be compensable.

### 2.    "Monitoring"

After the hearing decision issued, Attorney Shaw simultaneously worked on two distinct

aspects of the case. First, he dedicated time to "monitoring" the implementation of the Hearing

Officer's decision, which included the CSDE process. Second, he became involved in litigation

in this court. The court begins with the time devoted to monitoring, and discusses the court

litigation below.

Plaintiffs seek compensation for 47.9 hours spent monitoring the implementation of the

Hearing Officer's decision, and have indicated which entries in the billing records relate to that

task. (Doc. 244 at 5; Doc. 244-2 (denoting "monitoring" activities with the letter "M").) The

boards concede that, under cases like *Pennsylvania v. Delaware Valley Citizens' Council for*

*Clean Air*, 478 U.S. 546 (1986), it is permissible to award legal fees incurred in monitoring

---

[16] Of the 440.6 hours that Plaintiffs claim, the boards challenge approximately 250 hours.
The 250 challenged hours can be divided into the following categories: (1) actual hearing time
(about 70 hours); (2) travel time (about 17 hours); (3) motion practice (about 9 hours);
(4) matters "unrelated" to the due process hearing (about 14 hours); and (5) "other excessive
fees" (about 140 hours).

compliance with a hearing officer's decision. (*See* Doc. 173 at 44; Doc. 181-1 at 28 (adopting and incorporating HBOE's arguments).)

Earlier in this case, Attorney Shaw's definition of "monitoring" included his work pursuing Plaintiffs' Amended Counterclaim in court. (*See* Doc. 126-1 at 120.) Under that definition, Attorney Shaw claimed 399 hours devoted to "monitoring and enforcing the hearing decision." (*Id.*) The school boards argued that 399 hours devoted to monitoring (under that expansive definition) was "appalling in its excessiveness." (Doc. 173 at 44.)

Plaintiffs' current definition of "monitoring" excludes litigation in court, and is therefore much more limited. HBOE's position is now different; it does not describe the 47.9 hours as excessive, but instead argues that 39 of those hours should be attributed to NBBOE. (Doc. 252 at 4.) The court addresses that argument in its discussion of apportionment, below. NBBOE's position is also different; it now argues that some of the line items designated as "monitoring" are not related to the due process case or to the court litigation. (Doc. 253 at 2–3.) Plaintiffs reply that each of the items was useful and reasonably necessary to ensure that the Hearing Officer's decision was honored. (Doc. 259 at 1.) The court has reviewed each of the items that NBBOE challenges (totaling less than four hours), and concludes that they are all reasonable.

### 3.   Judicial Review of the Hearing Decision

Litigation in this court began when Plaintiffs filed their Complaint on September 2, 2011. (Doc. 1.) Since then, and after consolidation with NBBOE's case, No. 3:11-CV-1431, the litigation can be divided very broadly into two substantive categories. First, the parties sought affirmance or reversal of different portions of the hearing decision. Second, the parties litigated whether the school boards had failed to implement the hearing decision.

Attorney Shaw has indicated on the billing records those entries related to judicial review of the hearing decision. (*See* Doc. 244 at 2 & n.2; Docs. 244-2; 244-3 (denoting such entries with an asterisk).) He calculates that he spent 361.3 hours on that work. (*See* Doc. 244 at 2 & n.2; *id.* at 4.) In light of the court's observation that this case was over-litigated and over-briefed, Attorney Shaw proposes a 20% reduction in that figure, seeking compensation for only 289 hours. (*Id.* at 5.)

The court has independently reviewed the billing records related to litigation seeking judicial review of the hearing decision (Doc. 244-2). The court also notes that Plaintiffs achieved a favorable result in the stage of this court litigation reviewing the hearing decision. The court upheld the Hearing Officer's decision to hold NBBOE liable, upheld the decision to order compensatory education, and reversed the decision insofar as it denied a home-based program. *A.*, 2016 WL 3950079, at *8–15. In light of that, a fee award is appropriate. However—again because of Plaintiffs' excessive litigation in this case—the court reduces the hours awarded by one-third.

### 4.     ADA, § 504, and § 1983 Claims

A significant portion of the litigation in this case focused on the ADA, § 504, and § 1983 claims that Plaintiffs alleged in their Amended Counterclaims (Doc. 67). The court granted summary judgment to the school boards on all of those claims. *A.*, 2016 WL 3950079, at *27–33. Plaintiffs concede that they were not successful on the Amended Counterclaims, but seek compensation for 84.5 of the 337.7 hours billed related to those claims, arguing that some of the time spent is compensable. (Doc. 244 at 7–8.) NBBOE and HBOE both argue that, since Plaintiffs failed to prevail on their civil-rights claims, Plaintiffs should be denied any fees associated with those claims. (Doc. 246 at 7; Doc. 252 at 7.)

Here, Plaintiffs' civil-rights claims were presented together with their claims concerning judicial review of the hearing decision. But the civil-rights claims are "distinctly different claims for relief that are based on different facts and legal theories." *Hensley*, 461 U.S. at 434. Unlike the claims concerning review of the hearing decision, the civil-rights claims involved alleged failures to comply with that decision. The claims involved events that occurred after the hearing decision was issued, and were predicated on distinct legal theories. The court concludes that no fee may be awarded for services on these unsuccessful claims. *See id.*

Plaintiffs assert that "[s]ome of the time spent opposing HBOE's arguments is compensable." (Doc. 244 at 7.) They maintain that some of the briefing was "devoted to arguments relating to the award of attorneys' fees, how the award should be apportioned, and whether plaintiffs should receive in-home services." (*Id.*) The question of in-home services relates to the portion of the litigation concerning review of the hearing decision. The court is awarding fees for that work, as described above.

Attorneys' fees for the time spent litigating a fee claim are compensable. *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1183–84 (2d Cir. 1996). A significant portion of the parties' summary judgment filings related to the question of attorneys' fees and apportionment. As the court noted above, approximately 250 pages of the total 700 pages of briefing (about 35% of the total pages) were directed to those issues. Of course, the number of pages of briefing does not necessarily directly reflect how much time was spent litigating the fee claim, but the court concludes that it supplies a fair approximation. In light of the persistent over-briefing in this case, the court accepts Plaintiffs' suggestion that Attorney Shaw be compensated for 25% of the hours billed litigating the civil-rights claims, i.e., 84.5 hours.

**B.      Paralegal Smith**

Plaintiffs have submitted records showing that, through October 31, 2014, Ms. Smith has

spent a total of 91.5 hours on this case. (Doc. 126-4 at 26–27.) The school boards do not

challenge the number of hours Ms. Smith expended on this case. The court has reviewed the

billing entries for her work, and finds them all reasonable.

**IV.      Reimbursable Costs**

Plaintiffs initially sought reimbursement for costs (excluding Paralegal Smith's work) in

the amount of $6,390.88. (*See* Doc. 126-1 at 130; Doc. 126-4 at 27–28.) In light of the court's

ruling on Plaintiffs' ADA, § 504, and § 1983 claims, Plaintiffs concede that several items

contributing to that figure are not compensable. (Doc. 244 at 5.) Accounting for those

concessions, the remaining reimbursable costs are $1,151.12. The court finds that sum to be

reasonable.

**V.      Imposition of Fees and Costs**

In summary, the court concludes that Attorney Shaw's rate should be $450 per hour, and

Paralegal Smith's rate should be $140 per hour. Attorney Shaw is entitled to compensation for

667.4 hours, calculated as the sum of 294 hours for the due process stage, 47.9 hours for

monitoring, 241 hours for judicial review of the hearing decision, and 84.5 hours for litigation of

the fee claim. Ms. Smith is entitled to compensation for the 91.5 hours of her work.

| Timekeeper | Rate | Hours | Reasonable Fee |
|---|---|---|---|
| Attorney Shaw | $450 | 667.4 | $300,330 |
| Paralegal Smith | $140 | 91.5 | $12,810 |
| **TOTAL FEES** | | | **$313,140** |

Reimbursable costs are $1,151.12. Plaintiffs are entitled to attorneys' fees and costs in the total

amount of $314,291.12.

## VI.   Apportionment

Finally, it remains to determine how to apportion the award of fees and costs as between HBOE and NBBOE.  Plaintiffs maintain that the responsibility for paying fees and costs should be "joint and several." (Doc. 126-1 at 131; Doc. 169 at 55–58; Doc. 195 at 66–69; Doc. 196 at 90; Doc. 244 at 10 n.8.)  HBOE contends that it should only be responsible for a "small percentage" of any award to Plaintiffs.  (Doc. 245 at 2; *see also* Doc. 152 at 52–55; Doc. 173 at 40; Doc. 252 at 1.)  NBBOE argues that the award of fees and costs should fall "most heavily" upon HBOE.  (Doc. 255 at 10; *see also* Doc. 181-1 at 33; Doc. 211 at 13.)

In § 1983 actions, courts "may allocate the fee award between the responsible parties, setting the percentage for which each is liable where the claims against the defendants are separate and distinct or where culpability is significantly unequal, . . . or it may hold the responsible parties jointly and severally liable for the fee award." *Koster v. Perales*, 903 F.2d 131, 139 (2d Cir. 1990), *abrogation on other grounds recognized by N.Y. State Fed'n of Taxi Drivers, Inc. v. Westchester Cty. Taxi & Limousine Comm'n*, 272 F.3d 154, 158 (2d Cir. 2001) (per curiam).  In allocating fee liability, courts may consider issues such as the "relative culpability of the parties" and "the proportion of time spent litigating against each defendant." *Id.*  Although the court is authorized to apportion fees, "there is no rule in this circuit that requires it whenever possible." *Id.*  Similar logic applies for IDEA actions. *See Jeremy M. ex rel. L.M. v. Cent. Bucks Sch. Dist.*, No. CIV. A. 99-4954, 2001 WL 177185, at *2 (E.D. Pa. Jan. 31, 2001) ("Where more than one party has failed to comply with the IDEA, the Court may apportion the prevailing party's attorneys' fees according to the relative fault of each Defendant."); *Barbara Z. v. Obradovich*, 937 F. Supp. 710, 720–21 (N.D. Ill. 1996)

(apportioning attorneys' fees in IDEA case between defendants based on the relative fault of each party).

Regarding the proportion of time spent litigating against each Defendant, the court notes that a few of Attorney Shaw's billing entries concern tasks or communications directed individually to NBBOE or HBOE.  But as NBBOE correctly points out (Doc. 253 at 4), Attorney Shaw's billing records do not generally break out time expended as to each Defendant.  Any attempt to calculate precisely which hours might be attributable to which school board would be futile.[17]  Having carefully reviewed the administrative record and the parties' filings in this case, it appears that all of the parties—Plaintiffs, HBOE, and NBBOE—participated more or less equally throughout the various stages of litigation.  All parties participated vigorously in the due process case and the court litigation.

It is true that the school boards had some different arguments or involvement on various issues.  For example, NBBOE was the only school board that appealed the hearing decision, arguing that it was error to attribute to NBBOE any responsibility for Student's program during the 2009–2010 and 2010–2011 school years.  The court rejected that argument.  *A.*, 2016 WL 3950079, at *8–12.  On the other hand, both school boards appear to have participated roughly equally at the due process hearing, and both boards litigated other issues relating to judicial review of the hearing decision, including Plaintiffs' appeal concerning the in-home program.  *See id.* at *12–15.  Both school boards were also heavily involved in litigating the issue of

---

[17] NBBOE describes as "impermissibly vague" any entries in Attorney Shaw's billing records that do not indicate whether the work was directed at NBBOE or HBOE.  (Doc. 253 at 4.)  Plaintiffs argue that they had no obligation to document which defendant caused each time expenditure, and that NBBOE fails to identify precisely which time entries it says are vague. (Doc. 259 at 4.)  NBBOE has sought permission to submit a sur-reply to respond (Doc. 260), and Plaintiffs have filed an objection to that request (Doc. 261).  The court will not authorize a sur-reply.  Plaintiffs' time entries are not "vague" just because they are not broken out by defendant.

attorneys' fees—an issue that constituted a very substantial aspect of the overall litigation.  The court finds no basis to conclude that Plaintiffs' litigation time was expended disproportionately against one or the other Defendant.

Regarding the relative culpability of the parties, perhaps the most important point is that the Hearing Officer found, and the court affirmed, that the program provided by *both* NBBOE and HBOE for the 2009–2010 and 2010–2011 school years at Classical was not appropriate. *See id.* at *8–12.  Connecticut law required both school boards to be involved in Student's education during those school years: under Conn. Gen. Stat. § 10-264*l*(h), NBBOE was required to hold the PPT meetings, and HBOE was required to ensure that Student received the services mandated by the IEP produced by the PPT.  Here, there were problems both with planning and with execution.  The boards might have been culpable in different ways, but they share responsibility for the failure to deliver a free and appropriate public education.  The court concludes that, in this case, the most fair and sensible solution is to hold HBOE and NBBOE each liable for one half of Plaintiffs' fees and costs.

## Conclusion

NBBOE's Motion for Permission to Submit Sur-Reply (Doc. 260) is DENIED.

Plaintiffs' request for attorneys' fees, as supplemented (*see* Doc. 198), is GRANTED IN PART.  Plaintiffs are entitled to attorneys' fees and costs in the total amount of $314,291.12.  NBOE and HBBOE are each liable for half of that sum.

The parties are directed to submit a proposed order of judgment within ten days.

Dated this 17 day of January, 2017.

/s/ Geoffrey W. Crawford

Geoffrey W. Crawford, Judge
United States District Court

25